457 N.W.2d 17 (1990)
In re L.N.W., A Minor Child.
Appeal of C.W., Mother.
No. 89-1377.
Court of Appeals of Iowa.
March 27, 1990.
Robert J. Rehan of Vakulskas & Hoffmeyer, Sioux City, for appellant.
Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee, the State of Iowa.
Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.
HABHAB, Judge.
Appellant, C.W., appeals from juvenile court order terminating her parental rights.[1] We affirm.
The child in question, L.N.W., is a girl born on May 9, 1988. On May 29, 1988, L.N.W. was removed from the physical care of C.W. and placed in emergency foster care. On that date, C.W. was arrested for public intoxication and child endangerment after leaving the care of L.N.W. to other bar patrons while C.W. became inebriated.
*18 L.N.W. has remained in foster care since that time. In July 1988, L.N.W. was adjudicated a child in need of assistance.[2] The State subsequently filed a petition for termination of parental rights of C.W. and T.K. Following a hearing on the petition for termination of parental rights, the juvenile court terminated the rights of both parents. In its ruling, the juvenile court found the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963 (1982), applicable to the case.[3] C.W. raises two issues on this appeal: (1) whether the State satisfied the ICWA's requirement of including the testimony of a "qualified expert witness" in the termination proceeding, and (2) whether the State made sufficient active efforts to provide C.W. with remedial services and rehabilitative programs.
Appellate review of termination proceedings is de novo. In re W.G., 349 N.W.2d 487, 491 (Iowa 1984), cert. denied, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. Id. at 491-92. We note at the inception that the attorney and guardian ad litem for the minor child joins the appellee-State of Iowa in support of the juvenile court's order terminating C.W.'s parental rights.

I.
The first issue we need address concerns C.W.'s argument that the State failed within the meaning of the Indian Child Welfare Act to present the testimony of a qualified expert witness at the termination proceeding. To meet this requirement, the State presented the testimony of social worker Alma Schmitt. Thus, appellant's argument centers on whether Ms. Schmitt is a qualified expert witness within the meaning of that act.
ICWA provides in pertinent part:
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
25 U.S.C. § 1912(f) (1982). This section requires the juvenile court to consider the testimony of a qualified expert witness prior to termination of the parental rights of the child's parent or Indian custodian. This testimony "is to provide the court with knowledge of the social and cultural aspects of Indian life to diminish the risk of any cultural bias." In re N.L., 754 P.2d 863, 867 (Okl.1988). The term "qualified expert witness" is not statutorily defined. While the Department of Interior issued guidelines for state courts, these guidelines "are not published as regulations because they are not intended to have binding legislative effect." 44 Fed.Reg. 67584 (1979).
Ms. Schmitt is a social worker employed by the Department of Human Services for over two and one-half years. She has a bachelor of science degree in social work and has taken a seminar on ICWA. Additionally, Ms. Schmitt has throughout her life been associated with Native Americans and has affiliated herself with the Indian Youths of America group. Approximately one-third of Ms. Schmitt's usual case load of forty-five to fifty cases normally involve Native American households.
The juvenile court made a specific factual finding as to Ms. Schmitt's qualification to be a qualified expert witness under ICWA. Upon our de novo review, we find no abuse of discretion in this determination. See In re T.J.J., 366 N.W.2d 651, 655 (Minn.Ct.App.1985) (Court found no abuse in discretion in finding that two psychologists were qualified expert witnesses where both psychologists had taken course work in Native American culture and one of the psychologists was experienced in working with Native American youth.); In re K.A.B.E., 325 N.W.2d 840, 844 (S.D. *19 1982) (Social worker with B.A. in social work and who had regular contract with Native Americans and director of youth shelter which had approximately 30% Native Americans as residents were both found to be qualified expert witnesses.). We find the requirement of 25 U.S.C. section 1912(f), pertaining to qualified expert witness testimony, to have been met by the testimony of Ms. Schmitt.

II.
Appellant also argues that the State failed to show that active efforts were made to provide her with remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. ICWA provides:
Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
25 U.S.C. § 1912(d) (1982). We find appellant's argument on this issue to be meritless. The record shows conclusively that the State made a number of efforts at providing C.W. with remedial services and rehabilitative programs designed to prevent the breakup of her family. We note "these efforts and their futility must be shown beyond a reasonable doubt." Matter of Kreft, 148 Mich.App. 682, 384 N.W.2d 843, 848 (1986) (citing In re Morgan, 140 Mich.App. 594, 604, 364 N.W.2d 754, 758 (1985)).
C.W. has a long history of alcoholism and drug abuse. After L.N.W. was removed, C.W. was offered a number of services aimed at helping C.W. develop appropriate parenting skills and deal effectively with her substance abuse problems. These efforts were rebuffed by C.W.
When L.N.W. was removed from the custody of her mother, she was nineteen days old. The event precipitating her removal was the mother's arrest for public intoxication and child endangerment. The evidence is undisputed that C.W. was arrested at Ingall's Tap, based upon reports that C.W. had L.N.W. with her while intoxicated, apparently leaving the care of L.N.W. to the patrons.
After the child's removal, a number of services were offered to the mother. Assistance was offered to develop C.W.'s parenting skills and deal with her alcohol dependency. In June of 1988, C.W. was scheduled for psychiatric and psychological evaluation. Transportation was also offered to C.W. The evaluation reveals that she was in need of extensive counseling and that she suffers from an antisocial personality disorder. Attempts were made to enlist the assistance of C.W.'s extended family in encouraging C.W. to receive treatment for her substance abuse problem. All efforts have been in vain.
Supervised visitation with L.N.W. was also offered to C.W., but those visits were inconsistent and C.W. has recently shown little interest in visiting her child. When we review the entire record, it reveals that prior to initiating termination proceedings, continued efforts were made to keep the family together as required by the State and the Indian Child Welfare Act. There is significant and competent testimony that the Department had exhausted all resources and there was nothing more that could be offered. As a further indication of C.W.'s lack of interest in her child, the record reveals that during the course of the termination proceedings C.W. left the courtroom without any explanation.
The trial court was in the better position to evaluate the credibility of the witnesses. The trial court found that C.W. "has been offered a myriad of services in an attempt to reunify her with [L.N.W.], however, all service efforts have been unsuccessful due to [C.W.'s] lack of cooperation." The trial court further found that "there is no evidence of any bonding between [L.N.W.] and [C.W.]."
A home study was conducted on C.W.'s extended family home prior to the hearing on the petition for termination of parental rights. The home study was prepared with the view in mind that the primary caretakers *20 of L.N.W. would be C.W.'s brother, E.W., and E.W.'s girlfriend, L.F. E.W. and L.F. have a history of arrest, alcohol, and family dysfunction. E.W. and L.F. inquired from the Department as to their rights in receiving custody of L.N.W. Before the proceedings could be completed as to their fitness to be caretakers, they had moved to Minnesota to set up their home. When the paperwork was initiated to complete the home study in Minnesota, the family moved back to Sioux City and resided with C.W. In fairness, E.W. and L.F. have expressed a genuine concern about the future of L.N.W. However, because of the severity of their history, the Department was unable to pass favorably on their home study report.
We find this record more than sufficient to meet the requirements of 25 U.S.C. section 1912(d). We do not necessarily disagree with the appellant's contention that the party seeking termination must also demonstrate that services were also offered to the extended members of the Native American family in addition to the parent or guardian of the Native American child, but we need not rule on that question for it is clear to us after reviewing the entire record that services were offered to C.W.'s family as a whole.
Finally, we note that the Department recommended that E.W.'s family "be allowed to contact the adoption unit at this Department to make known their desire to adopt this child." We believe this recommendation is in keeping with the spirit of the Indian Child Welfare Act. We trust, without forming an opinion as to whether the adoption should be allowed, that the recommendation will be complied with.
AFFIRMED.
NOTES
[1] The putative father of L.N.W., T.K., made no appearance at the termination hearing.
[2] Although the Omaha Indian Tribe was notified of these proceedings and invited to intervene, they have not as of this date done so.
[3] The State does not dispute the applicability of ICWA in this case.