**In the Interest of S.M., A.M., K.W., P.M., and L.M., Minor Children.**

**C.M., Mother, Appellant.**

No. 93–504.

Court of Appeals of Iowa.

Oct. 5, 1993.

Robert J. Rehan of Thomas and Rehan, Sioux City, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Dewey P. Sloan, Asst. County Atty., for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

HABHAB, Judge.

C.M., the natural mother, appeals from a juvenile court order terminating her parental rights to her three older children, S.M., born December 7, 1980; A.M., born January 23, 1984; and K.W., born June 2, 1988.[1] We affirm.

On February 10, 1989, the children were removed from the mother's care on an emergency basis as a result of her intoxication. On February 13, 1989, a Child in Need of Assistance (CINA) petition was filed. S.M. and A.M. were returned to their mother's home, but in the care of their maternal grandmother. On March 4, 1989, S.M. was placed in emergency foster care with K.W. when the police discovered her sitting in a vehicle (her caretaker was in a nearby bar) insufficiently dressed in sub-zero weather. On March 13, 1989, an adjudicatory hearing was held. A.M. was allowed to remain in his mother's custody pending the dispositional hearing subject to her complete abstinence from alcohol, his attendance at the Native American day care center, homemaker contacts, and home studies of two relatives' homes. On April 13, 1989, following the dispositional hearing, A.M. was removed from his mother's custody and placed in his maternal aunt's home; K.W. and S.M. remained in foster care. In October 1989, S.M. and K.W. were placed with the same maternal aunt as A.M. On November 15, 1990, all three were removed from their aunt's home

---

1. C.M. does not appeal the termination of her parental rights to her twins, P.M. and L.M., born on September 24, 1990. L.W., the natural father of K.W., P.M., and L.M. does not appeal the termination of his parental rights nor does R.M., the possible natural father of S.M. and A.M. The Omaha Tribe, which was represented at the ter-mination hearing under the Indian Child Welfare Act (ICWA), has not appealed from the order which terminated the parental rights to all five children and placed custody and guardianship of the children with the Iowa Department of Human Services for purposes of adoption.

as a result of her intoxication and were placed together in a foster home, where they remain.

On September 29, 1992, the State filed a petition for termination of parental rights. The hearing was held on January 11 and 26, 1993.[2] C.M. challenged the expertise of the State's witnesses under the Indian Child Welfare Act (ICWA) and, at the conclusion of the State's case, she moved to dismiss the petition on the ground that the State failed to produce two qualified expert witnesses to testify in support of the petition. On March 2, 1993, the court overruled C.M.'s objection and ordered termination of her parental rights. C.M. appeals.

On appeal, the mother contends the juvenile court erred in terminating her parental rights, alleging as her only ground that the State failed within the meaning of the ICWA to present the testimony of a qualified expert witness at the termination proceeding.

The pertinent part of the ICWA provides:

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f) (1988).

◼ This section requires the juvenile court to consider the testimony of a qualified expert witness prior to the termination of the parental rights of the child's parent or Indian custodian. *In re L.N.W.,* 457 N.W.2d 17, 18 (Iowa App.1990). This testimony "is to provide the court with knowledge of the social and cultural aspects of Indian life to diminish the risk of any cultural bias." *In re N.L.,* 754 P.2d 863, 867 (Okla.1988).

The term "qualified expert witness" is not statutorily defined. The mother makes reference to the federal guidelines which identify three possible types of expert witnesses.

(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(iii) A professional person having substantial education and experience in the area of his or her specialty.

44 Fed.Reg. 67,584, 67,593 (1979).

While the Department of Interior issued these guidelines for state courts, these guidelines "are not published as regulations because they are not intended to have binding legislative effect." 44 Fed.Reg. at 67584.

◼ The juvenile court accepted two state witnesses, Linda Vogel and Mary Tope, as qualified expert witnesses for purposes of ICWA. Ms. Vogel has been employed as a social worker with the Iowa Department of Human Services for five years. She has a bachelor's degree in social work and psychology and attends three to four courses of continuing education per year, about one-half of which pertain to Native Americans. About fifty to seventy-five percent of her case work involves delivery of services to Native Americans. Ms. Vogel has been qualified under the ICWA sixteen times in the past.

Ms. Tope has been employed as a social worker for seven and a half years. She has a bachelor's degree in social work and has attended various workshops and seminars of continuing education. She has attended cultural training with regard to Native American Indians. Prior to working for the Iowa Department of Human Services, she was employed in the South Dakota department where she received basic training relative to the ICWA. Ms. Tope had no specific experience with C.M. or her children, but reviewed the case file before the termination hearing.

---

**2.** The parties stipulated at the beginning of the proceedings that the Indian Child Welfare Act is applicable.

The juvenile court made a specific factual finding that Ms. Vogel and Ms. Tope were qualified experts under ICWA. Upon our de novo review, we find no abuse of discretion in this determination. *See In re L.N.W.*, 457 N.W.2d at 18 (no abuse of discretion in finding social worker was a qualified expert witness when she had taken a seminar on ICWA, had throughout her life been associated with Native Americans and has affiliated herself with the Indian Youths of America group); *In re S.D.*, 402 N.W.2d 346, 350, (S.D.1987) (court found no abuse of discretion in finding a social worker who had ten years experience and who had worked on approximately 300 Indian family cases was a qualified expert); *In re T.J.J.*, 366 N.W.2d 651, 655 (Minn.Ct.App.1985) (court found no abuse in discretion in finding that two psychologists were qualified expert witnesses where both psychologists had taken course work in Native American culture and one of the psychologists was experienced in working with Native American youth); *In re K.A.B.E.*, 325 N.W.2d 840, 844 (S.D.1982) (social worker with B.A. in social work and who had regular contact with Native Americans and the director of youth shelter which had approximately 30% Native Americans as residents were both found to be qualified expert witnesses).

We find the requirement of 25 U.S.C. § 1912(f), pertaining to qualified expert witness testimony, to have been met by the testimony of Ms. Vogel and Ms. Tope.

**AFFIRMED.**