# IN THE COURT OF APPEALS OF IOWA

No. 20-1716
Filed November 23, 2021

**IN THE INTEREST OF C.C.,**
**Minor Child,**

**C.M., Father, and T.M.,**
        Petitioners-Appellees,

**S.O., Mother,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


        A mother appeals the termination of her parental rights.  **REVERSED AND**

**REMANDED.**


        Jane M. White of Gribble, Boles, Stewart & Witosky, Des Moines, for

appellant.

        Julie A. Forsyth of Forsyth Law Office, P.L.L.C., Winterset, for appellees.

        Yvonne C. Naanep, Des Moines, attorney and guardian ad litem for minor

child.


        Heard by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

The Iowa Indian Child Welfare Act (ICWA)[1] imposes special requirements that must be met before a court may terminate parental rights to an Indian child.[2] *See, e.g.*, Iowa Code § 232B.6(6)(a), .10(2). In this case, the juvenile court terminated a mother's parental rights to an Indian child. But we conclude ICWA's requirements were not met. So we must reverse the termination.

**I. Background Facts & Proceedings**

This case is about C.C. (the child), born in 2008. The child's mother is enrolled in the Rosebud Sioux Tribe (the Tribe). The child is also eligible for enrollment in the Tribe. The parties agree the child is an "Indian child" for purposes of ICWA.

In 2019, the child's father commenced this action to terminate the mother's parental rights under Iowa Code chapter 600A, our private termination statute. The Tribe intervened. A representative of the Tribe appeared at trial. The Tribe opposed termination of the mother's parental rights.

Following trial, the court concluded the father had met the requirements of both chapter 600A and ICWA. So the court terminated the mother's parental rights. The mother appeals.

---

[1] The Iowa Indian Child Welfare Act is codified as Iowa Code chapter 232B (2019). Iowa Code § 232B.1. Section 232B.2 states, in pertinent part: "The purpose of the Iowa Indian child welfare Act is to clarify state policies and procedures regarding implementation of the federal Indian Child Welfare Act, Pub. L. No. 95-608, as codified in 25 U.S.C. ch. 21."

[2] Section 232B.3(6) defines "Indian child" as "an unmarried Indian person who is under eighteen years of age or a child who is under eighteen years of age that an Indian tribe identifies as a child of the tribe's community."

**II. Standard of Review**

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). But we review statutory interpretation issues for correction of errors at law. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

**III. Discussion**

On appeal, the mother claims termination was improper because the father failed to meet the requirements of chapter 600A and ICWA. We begin with the mother's argument that the father failed to satisfy ICWA's qualified-expert-witness requirement. When a court is "considering whether to . . . terminate the parental rights of the parent of an Indian child," section 232B.10(2) obligates ("shall") the court to

> require that qualified expert witnesses with specific knowledge of the child's Indian tribe testify regarding that tribe's family organization and child-rearing practices, and regarding whether the tribe's culture, customs, and laws would support the . . . termination of parental rights on the grounds that continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child.

*See also* Iowa Code § 232B.14(2)(g) (requiring "[a] court of competent jurisdiction" to "vacate a court order and remand the case for appropriate disposition" if there is a "[f]ailure to provide the testimony of qualified expert witnesses as required by this chapter").

In this case, the father did not designate his own "qualified expert witnesses with specific knowledge of the child's Indian tribe." *See id.* § 232B.10(2). Instead, the father relied on the testimony of the Tribe's representative, Shirley Bad Wound. And it appears undisputed that Bad Wound is a "qualified expert witness" for purposes of ICWA. *See id.* § 232B.10 (defining "qualified expert witness" for

purposes of ICWA). It also appears undisputed that Bad Wound—the Tribe's representative—had "specific knowledge of the child's Indian tribe." *See id.* § 232B.10(2).

Instead, the dispute centers on the *content* of Bad Wound's testimony. To be sure, Bad Wound testified about "th[e] [T]ribe's family organization and child-rearing practices" as well as other aspects of the Tribe's culture. *See id.* But Bad Wound did not testify as to "whether"—in the words of section 232B.10(2)—"the [T]ribe's culture, customs, and laws would support the . . . termination of parental rights on the grounds that continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." Indeed, the juvenile court expressly found that Bad Wound "did not give an opinion as to whether not terminating [the mother's] parental rights would cause severe emotional or physical damage to" the child. And the father's brief acknowledges that Bad Wound "decline[d] to give an opinion of whether continued custody of [the child] by [the mother] would result in serious emotional or physical damage."[3]

So it appears section 232B.10(2) was not satisfied and, therefore, termination was improper. Even so, we have carefully considered the father's counterarguments. We think they boil down to four points:

1. The purpose of ICWA's qualified-expert-testimony requirement "is to provide the court with knowledge of the social and cultural aspects

---

[3] Nor does it appear Bad Wound was prepared to provide that sort of opinion: As the juvenile court found, Bad Wound was not acquainted with the child or the mother. And Bad Wound testified she had received no summary of the family's information. But it appears Bad Wound had learned some details from the parties' lawyers. For one thing, she knew the child had been raised by grandparents.

of Indian life to diminish the risk of any cultural bias." *See In re L.N.W.*, 457 N.W.2d 17, 18 (Iowa Ct. App. 1990) (citation omitted).

2.  Bad Wound provided the court with information about "the tribe's culture, customs, and laws." *See* Iowa Code § 232B.10(2).

3.  The juvenile court expressly found "that no cultural bias against" the mother "as an Indian parent [was] present, either explicitly or implicitly, in the decision as to whether or not to terminate" the mother's rights.

4.  *Therefore*, ICWA's qualified-expert-testimony requirement was fulfilled *even though* Bad Wound did not testify as to whether "the tribe's culture, customs, and laws would support the . . . termination of parental rights on the grounds that continued custody of the child by the [mother] is likely to result in serious emotional or physical damage to the child," as section 232B.10(2) appears to require.

We disagree. For one thing, the father has not cited—and we have not found—any binding authority that requires us to adopt the father's interpretation of ICWA's requirements. *Cf. NCJC, Inc. v. WMG, L.C.*, No. 19-0241, 2020 WL 2478670, at *2 (Iowa Ct. App. May 13, 2020) ("In all matters, though, we must follow the precedents of our supreme court."), *aff'd on further review*, 960 N.W.2d 58 (Iowa 2021). For example, although the father cites our published decision in *C.A.V.*, it is readily distinguishable. 787 N.W.2d at 102. Unlike here, the qualified expert witness in *C.A.V.* opined that the parent's "continued custody . . . was likely to result in serious emotional damage to the child." *Id.*

The father also cites *In re L.N.W.* 457 N.W.2d 17, 18 (Iowa Ct. App. 1990). But the issue in *L.N.W.* was the expert's *qualifications*, not the *content* of the expert's testimony. *Id.* (noting "appellant's argument centers on whether Ms. Schmitt is a qualified expert witness within the meaning of" the federal Indian Child Welfare Act).

Finally, the father cites *In re D.S.* 806 N.W.2d 458, 469 (Iowa Ct. App. 2011). In *D.S.*, we observed that section 232B.10 does not require the expert to "*recommend* or *consent to* termination, or *agree that* the child would likely be subject to serious emotional or physical harm if returned home." *Id.* at 471 (emphasis added). Even so, *D.S.* did not alter section 232B.10's requirement that the expert testify as to "*whether*" termination would be supported on those grounds. Rather, *D.S.* confirmed that

> [t]he qualified expert witness should have "specific knowledge of the child's Indian tribe" and should testify "regarding that tribe's family organization and child-rearing practices," and *whether* the tribe's "culture, customs, and laws" would support the termination of parental rights "on the grounds that continued custody of the child by the parent . . . *is likely to result in serious emotional or physical damage to the child*."

*Id.* at 469 (emphasis added) (quoting Iowa Code § 232B.10(2)).

This reading of *D.S.* aligns with our traditional principles of statutory interpretation. Those principles require us to find the meaning of section 232B.10(2) in its text, in the "words chosen by the legislature." *See State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017) (citation omitted). And as *D.S.* acknowledged, the words of section 232B.10(2) plainly require qualified-expert testimony as to "whether the tribe's culture, customs, and laws would support the . . . termination of parental rights on the grounds that continued custody of the child

by the parent . . . is likely to result in serious emotional or physical damage to the child." *See* 806 N.W.2d at 469. We cannot ignore these words or the requirements they create. *See Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa 1970) ("Effect must be given, if possible, to every word, clause and sentence of a statute."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("None should be ignored. None should needlessly be given an interpretation that causes it to . . . have no consequence."). Rather, our duty is to enforce them. *See Holland v. State*, 115 N.W.2d 161, 164 (Iowa 1962).

It is true our decisions have often said or implied that the purpose of ICWA's qualified-expert-testimony requirement "is to provide the court with knowledge of the social and cultural aspects of Indian life to diminish the risk of any cultural bias." *D.S.*, 806 N.W.2d at 470 (citation omitted); *In re D.W.*, No. 00-1677, 2001 WL 710205, at *3 (Iowa Ct. App. June 13, 2001); *In re A.V.S.*, Nos. 1999-427, 9-680, 99-0376, 2000 WL 18858, at *4 (Iowa Ct. App. Jan. 12, 2000); *In re J.D.B.*, 584 N.W.2d 577, 582–83 (Iowa Ct. App. 1998) (citation omitted); *In re S.M.*, 508 N.W.2d 732, 734 (Iowa Ct. App. 1993) (citation omitted); *In re L.N.W.*, 457 N.W.2d 17, 18 (Iowa Ct. App. 1990) (citation omitted); *accord In re F.K.,* No. 21-0901, 2021 WL 4592828, at *3 (Iowa Ct. App. Oct. 6, 2021); *C.A.V.*, 787 N.W.2d at 102. But those *general* observations do not—they cannot—change the *specific* requirements imposed by the words of section 232B.10(2). *Cf.* Scalia & Garner, *Reading Law*, at 56–57 (noting that statutory purpose "must be derived from the text" and "cannot be used to contradict text or supplement it"). So those observations do not mean section 232B.10(2) was satisfied just because Bad Wound provided the juvenile court with some information about the tribe's culture

and customs. Nor do they mean section 232B.10(2) was satisfied just because the juvenile court found that "no cultural bias against" the mother "is present." Rather, as the legislature's words make clear, section 232B.10(2) cannot be satisfied unless there is qualified-expert-witness testimony about "whether the tribe's culture, customs, and laws would support the . . . termination of parental rights on the grounds that continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." Because that testimony was not presented here, section 232B.10(2) was not satisfied. So we must reverse.[4] *Cf. D.W.*, 2001 WL 710205, at \*5 (reversing termination order where "[t]he State . . . failed to meet the requirements of [the federal Indian Child Welfare Act] because it did not present the testimony of a qualified expert witness 'that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child'" (quoting 25 U.S.C. § 1912(f))).

**REVERSED AND REMANDED.**

---

[4] We do not reach any of the mother's other arguments.