In the Interest of C.A.V., Minor Child,

C.V., Mother, Petitioner,

R.R.A., Father, Appellant.

No. 10–0075.

Court of Appeals of Iowa.

June 16, 2010.

Micah J. Schreurs of Wolff, Whorley, De Hoogh & Shreurs, Sheldon, for appellant-father.

Debra S. DeJong of Klay, Veldhuizen, Bindner, De Jong, De Jong & Halverson, P.L.C., Orange City, for appellee-mother.

Missy Clabaugh of Jacobsma, Clabaugh & Freking, P.L.C., Sioux Center, attorney and guardian ad litem for minor child.

Considered by VAITHESWARAN, P.J., and DOYLE and TABOR, JJ.

TABOR, J.

A father appeals the termination of his parental rights in a private termination action. He contends he did not abandon his daughter, who is an enrolled member of an Indian tribe. He further contends the child's mother failed to satisfy the Iowa Indian Child Welfare Act (Iowa ICWA), Iowa Code chapter 232B (2007) in two ways: (1) by not showing his continued custody was likely to result in serious emotional or physical damage to his daughter and (2) by not providing evidence of "active efforts" to prevent the break-up of the Indian family. We affirm the juvenile court's decision.

## I. Background Facts & Proceedings

Rayne and Christina are the parents of C.A.V., who was born in April of 2005. They met in April of 2004 when Christina was nineteen years old and Rayne was twenty-nine years old. The couple lived together for a few months, but Christina moved out before C.A.V. was born. Rayne did not participate in any prenatal care visits and did not attend the birth. Rayne first saw his daughter when she was three weeks old and Christina brought her to his workplace. Similar visits of thirty minutes to an hour occurred approximately once a month between May of 2005 and May of 2006. One exception was a visit that lasted for several hours. Christina recalled that she always arranged the visits, while Rayne testified that he initiated the contact about five times. Rayne and Christina also spoke frequently on the telephone during this period of time, though as the juvenile court noted, the evidence did not support that C.A.V. was a central topic of these conversations.

Rayne provided a total of $500 in support for C.A.V. during her first thirteen months of life, in separate payments of $200 and $300, and only after Christina requested financial help. In May of 2006, Rayne acknowledged paternity and was ordered to pay $100 a month in child support. He was current in his payments as of the time of the termination order.

Rayne's contact with C.A.V. stopped on May 23, 2006, when he was sentenced to concurrent eight-year prison sentences in South Dakota for two felony offenses of witness tampering and concurrent one-year sentences for two misdemeanor offenses of furnishing alcohol to a minor.

Christina initially wrote to the sentencing judge, extolling Rayne's qualities as a "great father." She changed course in a second letter, expressing her fear of him as a "dangerous" and "manipulative" man.

Rayne decided not to accept visitors during his incarceration. He also opted to have no direct communication with C.A.V. during his time in prison, despite two letters from Christina inviting him to call her. Rayne's mother occasionally sent cards and gifts to C.A.V. during this time. Christina sought a pro se domestic abuse protective order in November of 2006, but moved to dismiss it less than a month later. Christina believed the protective order would enable her to find out Rayne's release date, but later learned that the South Dakota Department of Corrections

would notify her. Rayne refrained from contacting his daughter because he concluded it was not in his "best interests" as he sought to overturn his convictions and secure parole.

After Rayne received parole in the spring of 2009, he petitioned for visitation with C.A.V. By that time, C.A.V. was four years old and had no knowledge that Rayne was her father. Christina denied Rayne's request for visitation. She married another man while Rayne was incarcerated and C.A.V. considers Christina's husband Kyle to be her father. Kyle and Christina also have a child in common.

On May 8, 2008, Christina petitioned for termination of Rayne's parental rights under Iowa Code section 600A.5, alleging abandonment. The juvenile court appointed C.A.V. a guardian ad litem, whose report supported the petition for termination.

On October 1, 2008, Rayne filed a motion to determine the applicability of the Iowa ICWA. Rayne attached certification from the Bureau of Indian Affairs showing C.A.V. was an enrolled member of the Lower Brule Sioux Tribe with one-sixteenth degree of Indian blood. Rayne has not been involved with the tribe. His Indian father's parental rights were terminated when Rayne was an infant and he was adopted by his non-Indian stepfather. Rayne testified he had not been able to embrace his Indian heritage but was "curious" about it.

The juvenile court first tackled the question whether Iowa Code chapter 232B, providing for the protection of Indian children, applied to Christina's termination petition. The court determined sections 232B.5(19) and 232B.6(6)(a) were applicable to the termination proceedings.

The juvenile court held an evidentiary hearing on September 29, 2009, and terminated Rayne's parental rights to C.A.V. on November 5, 2009. Rayne now appeals.

## II. Scope and Standards of Review

We review de novo termination proceedings under chapter 600A. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). We accord weight to the factual findings of the juvenile court, especially those regarding witness credibility, but we are not bound by them. *Id.* To the extent Rayne's claims of error rest upon statutory interpretation, our review is for correction of errors of law. *In re R.E.K.F.*, 698 N.W.2d 147, 149 (Iowa 2005). The paramount concern in termination proceedings is the best interest of the child. Iowa Code § 600A.1; *see In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (holding best interests are to be determined within statutory framework and not upon judge's own perceptions).

The provisions of the Iowa ICWA are to be strictly construed and applied to protect American Indian families. *In re J.L.*, 779 N.W.2d 481, 487 (Iowa Ct.App.2009).

## III. Dual burdens of proof

The parties disagree whether Christina must prove the elements of abandonment by clear and convincing evidence or by evidence beyond a reasonable doubt. Rayne contends the proof-beyond-a-reasonable-doubt standard in section 232B.6(6)(a) applies to all aspects of the termination proceeding. Christina counters that ICWA provides a separate burden of proof as it relates to the risk of serious emotional or physical damage to the child in section 232B.6(6)(a), but that proof of abandonment remains subject to the clear-and-convincing-evidence standard in section 600A.8.

The Iowa Supreme Court recognized the variant standards in *In re P.L.*, 778 N.W.2d 33, 35 n. 1 (Iowa 2010) and *In re*

*A.W.*, 741 N.W.2d 793, 807 n. 11 (Iowa 2007). However, in neither case did the court definitively answer the question whether the elements of abandonment must be proved beyond a reasonable doubt. In *A.W.*, the court noted in dicta ICWA's higher standard for showing harm from continued custody, adopted from the federal act at 25 U.S.C. section 1912(f) (2006), but did not have occasion to apply the proof-beyond-a-reasonable-doubt standard to a sufficiency challenge. *A.W.*, 741 N.W.2d at 807, n. 11. The court in *P.L.* relied on the clear-and-convincing-evidence standard because that standard was applied by the juvenile court and the parties did not raise the burden of proof as an issue on appeal. *P.L.*, 778 N.W.2d at 35, n. 1.

Rayne cites *In re J.W.*, 528 N.W.2d 657, 662 (Iowa Ct.App.1995) for the proposition that the party seeking termination must prove the elements of abandonment beyond a reasonable doubt. However, *J.W.* addressed the higher burden only as to 25 U.S.C. section 1912(f) [1] and not as to proof of abandonment under Iowa Code section 600A.8(3)(b). *J.W.*, 528 N.W.2d at 662.

Although the juvenile court concluded Christina proved Rayne's abandonment of their daughter beyond a reasonable doubt, on appeal Christina properly recites the required burden of proof as clear and convincing evidence. The juvenile court should have applied the clear-and-convincing-evidence standard to all matters except the question whether Rayne's continuing custody is "likely to result in serious emotional or physical damage" to C.A.V. Iowa Code § 232B.6(6)(a) Proof beyond a reasonable

doubt was required only with respect to the discrete determination required by section 232B.6(6)(a). In the future, juvenile courts should employ a dual burden of proof to the separate findings under sections 600A.8 and 232B.6(6)(a). Applying dual standards is consistent with how other jurisdictions have reconciled the beyond-a-reasonable-doubt standard expressed in section 1912(f) of the federal ICWA with their own state-law findings in termination cases. *See, e.g., Valerie M. v. Arizona Dep't of Econ. Sc.*, 219 Ariz. 331, 198 P.3d 1203, 1207 (2009); *Timmons v. Arkansas Dep't of Human Services*, —— S.W.3d ——, ——, 2010 WL 1904519 (Ark.Ct.App.2010); *In re D.S.P.*, 166 Wis.2d 464, 480 N.W.2d 234, 238–39 (1992).

The clear-and-convincing-evidence standard also should be applied to the "active efforts" mandate found in section 232B.5(19). *See In re Roe*, 281 Mich.App. 88, 764 N.W.2d 789, 797 (2008), *abrogated on other grounds by In re J.L.*, 483 Mich. 300, 770 N.W.2d 853 (2009); *In re Vaughn R.*, 320 Wis.2d 652, 770 N.W.2d 795, 810–11 (Wis.Ct.App.2009). *But see In re L.N.W.*, 457 N.W.2d 17, 19 (Iowa Ct.App. 1990) (applying the beyond-a-reasonable-doubt standard to the "active efforts" requirement in 25 U.S.C. section 1912(d) in reliance on Michigan case subsequently disavowed in *Roe*, 764 N.W.2d at 797). Unlike section 232B.6(6)(a), no burden of proof is specified in section 232B.5(19). The legislature's decision to impose a higher burden of proof for the determination whether *continued custody is likely to result in harm to the Indian child* is not

---

**1.** This federal provision states:

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the

continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912.

likewise reflected in the separate provision requiring active efforts. Statutory text expresses legislative intent by omission as well as inclusion. *State v. Iowa Dist. Ct.,* 730 N.W.2d 677, 679 (Iowa 2007).

## IV. Abandonment

■ Rayne challenges the sufficiency of the evidence to support the juvenile court's conclusion that he abandoned C.A.V.

Christina sought to terminate Rayne's parental rights under section 600A.8(3)(b). That statute provides that if a child is six months of age or older, a parent is deemed to have abandoned a child "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward the support of the child of a reasonable amount, according to the parent's means" and as demonstrated in any of three ways: (1) visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child; (2) communicating on a regular basis with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child; and (3) openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child. Iowa Code § 600A.8(3)(b).

■ The phrase "to abandon a minor child" is defined in section 600A.2(19) to mean that a parent rejects the duties imposed by the parent-child relationship and makes no provision or only a marginal effort to provide for the support of the child or to communicate with the child. Abandonment is characterized as the "giving up of parental rights and responsibilities accompanied by an intent to forego them." *In re Burney,* 259 N.W.2d 322, 324 (Iowa 1977). Two elements are necessary to show abandonment: the conduct of the parent in giving up parental rights and responsibilities and the parent's intent to do so. *In re Goettsche,* 311 N.W.2d 104, 106 (Iowa 1981). A parent may evince an intent to abandon the child even though the parent subjectively maintains an interest in the child if that interest is not accompanied by "affirmative parenting to the extent practical and feasible in the circumstances." *Id.*

We determine Christina has shown by clear and convincing evidence that Rayne has abandoned his child within the meaning of section 600A.8(3)(b). Rayne has not maintained "substantial and continuous or repeated contact with the child." *See* Iowa Code § 600A.8(3)(b). During C.A.V.'s first thirteen months, Rayne did have repeated contact with his daughter, but the visits generally lasted less than an hour and were initiated by Christina. Rayne did not engage in the typical parenting duties of feeding, clothing, or reading to his daughter.

■ All contact with his daughter ended when Rayne went to prison in May of 2006, despite Christina's letters inviting him to maintain a relationship with C.A.V. while incarcerated. Any mixed messages arising from Christina's request for a protective order, which was rescinded less than a month later, do not excuse Rayne's failure to communicate with his daughter during the nearly three years he was behind bars. Under Iowa's termination case law, a parent "cannot use his incarceration as a justification for his lack of relationship with the child." *In re M.M.S.,* 502 N.W.2d 4, 8 (Iowa 1993). Rayne made a conscious choice to engage in crimes, resulting in his convictions and incarceration, at the ex-

pense of building a relationship with his daughter.

Rayne points out that he was current on his child support obligations at the time of the termination hearing. However, his contributions to his child's financial well-being do not overcome his complete abstention from fostering her physical, social, and emotional development. *See Goettsche,* 311 N.W.2d at 106 (citing with approval *In re J.L.Z.,* 492 Pa. 7, 421 A.2d 1064, 1064–65 (1980) ("This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.... Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.")).

Rayne's conduct shows his intent to forego his parental rights. We affirm the finding of abandonment under section 600A.8(3)(b).

### V. Serious Emotional or Physical Damage

■ Rayne next contends that Christina fell short of proving beyond a reasonable doubt that his continued custody of C.A.V. was likely to result in serious emotional or physical damage to the child. We reject this contention.

Under section 232B.6(6)(a), a court shall not order termination of parental rights over an Indian child in the absence of a determination—including qualified expert testimony—that the continued custody of the child by the parent is "likely to result in serious emotional or physical damage to the child." The phrase "continued custody" in this provision includes both legal and physical custody. *See In re Vaughn R.,* 320 Wis.2d 652, 770 N.W.2d 795, 803 (Wis.Ct.App.2009) (analyzing federal

ICWA provision at 25 U.S.C. § 1912(f)). The purpose of section 232B.6(6)(a) "is to provide the juvenile court with knowledge of the social and cultural aspects of Indian life to diminish the risk of any cultural bias in the termination decision." *See In re L.N.W.,* 457 N.W.2d 17, 18 (Iowa Ct.App. 1990) (citation omitted) (discussing 25 U.S.C. § 1912(f)).

Christina presented the testimony of Gerald H. Denney, who served as a social worker for the Santee Sioux Tribe for twenty years and has testified as an ICWA specialist more than one hundred times. Mr. Denney graduated from college with a double major in criminal justice and Indian studies. His work involved the delivery of child and family services to the Santee Sioux Tribe on a daily basis. Mr. Denney testified that he was not familiar with any member of Lower Brule Sioux Tribe, to which Rayne and C.A.V. belonged, who was qualified as an expert witness. However, Mr. Denney testified that the parenting practices of the Santee Sioux Tribe are very similar to those of the Lower Brule Sioux Tribe.

Mr. Denney met the requirements for a qualified expert witness in section 232B.10. The record does not indicate that the Lower Brule Tribe formally recognized Mr. Denney as having the knowledge to be a qualified expert, *see* section 232B.10(3)(b), but he possessed the qualifications described in Iowa Code sections 232B.10(3)(c) and (d).

After reviewing the termination file, including the report of the guardian ad litem, Mr. Denney formed an opinion that Rayne's continued custody of C.A.V. was likely to result in serious emotional damage to the child. The ICWA expert believed that bringing Rayne into the picture, after he had little or no contact with his daughter for more than four years,

would confuse C.A.V. and result in a shocking "loss of identity.".

Mr. Denney, who is a Native American parent himself, did not believe that C.A.V.'s tie to her tribe necessarily would be severed by the termination of her father's parental rights. Mr. Denney pointed out that Rayne had not yet provided his daughter with any link to her cultural heritage. Given the lack of connection between Rayne and the tribe, this case presented no threat that cultural bias against Rayne as an Indian parent would creep into the juvenile court's termination decision.

Rayne emphasizes continuing his parental rights would involve only reasonable visitation rights with C.A.V. because Christina has been granted care, custody and control of the child. However, he minimizes the emotional toll such visitation would take on this four-year-old child who is stable and secure in her existing family environment. The juvenile court expressed concern that Rayne's history of criminal behavior and his current lifestyle, including posting a risqué photograph of himself on his Internet MySpace page, did not demonstrate the level of maturity necessary to begin parenting. The likelihood of serious emotional damage exists not only from the shock of introducing Rayne into C.A.V.'s life, but in thwarting her prospects for long-term permanence and possible adoption by Christina's husband Kyle.

## VI. Active Efforts

■ Finally, Rayne asserts that Christina did not satisfy the "active efforts" requirement of the Iowa ICWA. A party seeking termination of parental rights over an Indian child must provide evidence to the juvenile court that "active efforts have been made to provide remedial services and rehabilitative programs de-signed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." Iowa Code § 232B.5(19). In a private termination case, section 232B.5(19) is directed at attempts to preserve the parent-child relationship or the child's connection to Indian culture. *See In re Crystal K.,* 226 Cal. App.3d 655, 276 Cal.Rptr. 619, 626 (1990) (analyzing "active efforts" requirement of the federal ICWA).

Christina met the "active efforts" requirement in two ways. First, even without knowing C.A.V. was a tribal member, Christina encouraged Rayne to participate in his daughter's life by facilitating visits before his incarceration and by inviting continued contact during his prison stay. These efforts to preserve the parent-child relationship were not successful because Rayne decided not to communicate with Christina or C.A.V. during his time in prison. After becoming aware of C.A.V.'s status as an enrolled member of the tribe, Christina wrote to the Lower Brule Sioux Tribe notifying its leaders about the termination action and requesting information regarding the tribe and its culture to share with her daughter. Christina also left telephone messages with the tribe. Her letters were not answered and her calls were not returned. Christina cannot be expected to find remedial services or rehabilitative programs to prevent the breakup of an Indian family that was never really intact. While Rayne is an enrolled member of the tribe, he admittedly never embraced his Indian heritage. Rayne was raised by two non-Indian parents. Section 232B.5(19) provides: "Active efforts shall utilize available resources of the Indian child's extended family, tribe, tribal and Indian social service agencies and individual Indian caregivers." Because these resources were not available to Christina, her duty under the statute was satisfied.

The "active efforts" requirement must be construed in the context of the existing circumstances where the Indian father has never bonded with either his tribe or his daughter. While the ICWA focuses on preserving Indian culture, it does not do so at the expense of a child's right to security and stability. *J.L.*, 779 N.W.2d at 492.

We affirm the decision of the juvenile court terminating Rayne's parental rights under sections 600A.8(3)(b) and 232B.6(6)(a).

**AFFIRMED.**