**IN THE COURT OF APPEALS OF IOWA**

No. 14-0849
Filed June 24, 2015

**IN THE INTEREST OF K.B. AND M.B.,**
**Minor Children,**

**K.S., Mother,**
**Petitioner-Appellee,**

**K.B., Father,**
**Respondent-Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Lawrence P.

McLellan, Judge.

The father appeals the district court's grant of the mother's petition to

terminate the father's parental rights to their two children, K.B. and M.B.

**AFFIRMED.**

Nicholas Dial of Benzoni Law Office, P.L.C., Des Moines, for appellee

mother.

Christine Sand of Wild, Baxter & Sand, P.C., Guthrie Center, for appellant

father.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

The father appeals the district court's grant of the mother's petition to terminate the father's parental rights to their two children, K.B. and M.B. He asserts the court improperly terminated his rights under Iowa Code section 600A.8(3) (2013), claiming: (1) he did not abandon the children, as the mother prevented him from contacting the children; (2) he lacked the requisite intent to abandon, as required by the statute; (3) the mother failed to prove by clear and convincing evidence he did not financially support the children; and (4) termination of his parental rights is not in the children's best interests. We agree with the district court the father abandoned the children within the meaning of Iowa Code section 600A.8(b) by failing to maintain contact. Furthermore, termination of the father's parental rights is in the children's best interests. Consequently, we affirm the order of the district court terminating the father's parental rights.

**I. Factual and Procedural Background**

The mother and father were married in 1999 and their marriage was dissolved in 2006. K.B. was born December 1998, and M.B. was born June 2001. In approximately 2005, the father began using methamphetamine. The mother asked him to either obtain treatment or leave; he chose to leave for four months, during which time he had minimal contact with the children. He returned briefly for K.B.'s fifth birthday, but was visibly going through withdrawal. He told K.B. he was leaving to get something from the garage but never returned. K.B. stated this is the only memory she has of the father. M.B. has no memory of him.

The dissolution decree was entered after the father's default. It granted the mother full custody of the children, with the father only allowed supervised visitation through Generations Inc., until such time as he could demonstrate he was "totally drug free." The decree further stated the father could not have contact with the mother "except for visitation information or rights." The father filed a motion to set aside the default judgment, stating he could not arrange for the supervised visitation through Generations because it no longer provided those services, though he suggested no other agency that could provide similar services. The district court denied the motion and no further action was taken by the father. The father has never exercised his visitation rights and has not seen the children since 2006.

The father has had no other contact with the children. Two letters were sent by the father's attorney in 2007 and 2009 requesting visitation with the children. The letters stated the father was sober[1] but failed to suggest an agency that could provide supervised visitation. The mother did not respond to these letters. The father made no attempt to contact the children in any other manner, and he only very occasionally inquired as to their wellbeing through other family members. At the hearing, the father's testimony established he had extremely minimal knowledge about the children's lives.

The father has been involved with the criminal justice system since his first arrest in April 2006. He has been incarcerated based on convictions for the

---

[1] The first letter stated the father was being drug tested as a condition of his probation and the tests had come back clean; it also provided the number for his probation officer. The second letter stated it enclosed copies of negative drug tests but only the letter was entered into the record.

possession of a controlled substance, and re-incarcerated when he violated parole by again using methamphetamine. The father has been incarcerated for the majority of the children's lives. At the hearing, the father testified he was currently attending an inpatient substance abuse treatment as a condition of his probation stemming from a conviction in November 2013.

Despite attending numerous drug treatment programs, the record establishes the father has been unable to resolve his methamphetamine addiction. While incarcerated, he remained sober for approximately a year. As of the hearing, the longest period the father has been sober while not incarcerated or in a rehabilitation program was nine months. He testified that he is more committed now to regaining sobriety than he has been in the past.

The mother has lived in the same house for the past nine years and has maintained the same cell phone number.[2] She is remarried and the children view her husband as their father. Both children share a substantial bond with him, and he has indicated that he wishes to adopt them. In all respects the children are thriving. Additionally, for some time the children's paternal grandfather lived close by and had frequent contact with the children and the mother. The children shared a close bond with him until his death in 2010. He also provided financial support for the children in order to partially satisfy the father's child support obligation, primarily in lump sum payments. The father's contributions to his support obligation consisted of the garnishment of his wages

---

[2] The father testified one of the primary reasons he failed to contact the mother so as to establish visitation was because he did not know her phone number or where she lived.

and income tax returns. His last payment was in June 2013, and, after contributing $19,327.85, he remained $11,024.35 in arrears.

The mother petitioned to terminate the father's parental rights on October 31, 2013, under Iowa Code chapter 600A. A hearing was held on March 26, 2014, and the district court terminated the father's parental rights by an order filed May 1, 2014. The father appeals.

## II. Standard of Review

We review termination proceedings brought pursuant to Iowa Code chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We are not bound by the district court's factual findings, but we accord them weight, particularly with regard to its findings on the credibility of witnesses. *Id.* Additionally, our primary concern is the best interests of the children. *Id.*

With respect to the standard for terminating parental rights, Iowa Code section 600A.8 states:

> The juvenile court shall base its findings and order under section 600A.9 on clear and convincing proof. The following shall be, either separately or jointly, grounds for ordering termination of parental rights:
> . . . .
> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
> . . . .
> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b)(1)–(3). In addition to these factors, the parent must also have the intent to abandon the children. *See C.A.V.*, 787 N.W.2d at 101.

## III. Abandonment

The father asserts he did not abandon the children within the meaning of Iowa Code section 600A.8(b)(3). He asserts he attempted to have meaningful contact with the children but was prevented from doing so by the mother, particularly because she would not respond to the letters sent by his attorney or arrange visitation. The mother responds it was the father's responsibility to demonstrate his sobriety and find a suitable supervisor, neither of which he did. However, the father relies on his paid child support in the amount of $19,327.85, to demonstrate he did not have the intent to abandon the children.

> With regard to its finding of abandonment, the district court stated:
>
> The evidence clearly and convincingly establishes that [the father] abandoned his children as early as 2006. He has not made an effort since that time to be a parent to these children, he has not met his financial obligations to them, he has not demonstrated a continued interest in them, he has not maintained any communication with them, and he has not established or maintained a place of importance in their lives.

We agree with this statement as well as the court's finding the father abandoned the children within the meaning of chapter 600A. K.B. has one brief recollection of her father—when he arrived at her fifth birthday party after

abusing, then showing signs of withdrawal from methamphetamine—M.B. does not remember him at all. This is because the father has never attempted to contact the children directly, and has only sporadically, over a period of nine years, attempted to achieve contact through other means. However, he maintains the mother prevented him from having contact with the children. The record, though, does not support this assertion. Pursuant to the custody order, the father was required to demonstrate his sobriety before he could have contact with the children. However, he failed to do so beyond an assertion by his attorney he was not using methamphetamine; nor did he suggest an agency that could supervise the visits. Consequently, the father's lack of contact was due to his conduct rather than the mother's actions, and therefore Iowa Code section 600A.8(3)(b)(1) does not preclude the finding of abandonment. *See id.* (noting the parent can establish he did not abandon the children by: "Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child").

The father's frequent incarceration also contributed to his inability to see the children. During that time, the father spoke often with his father—who had contact with the mother—and the father only inquired about the children once. Nor did he attempt to communicate by phone, email, or letters with the children during his incarceration. Rather, two letters were sent by his attorney indicating the father wished to exercise his visitation rights. Nonetheless, the father cannot rely on his incarceration to excuse his lack of contact, and the subsequent lack of a bond, with the children. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993) (recognizing that a parent "cannot use his incarceration as a justification for his

lack of relationship with [a] child . . . especially . . . when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with the child"). This incarceration is primarily due to the father's status as an abuser of methamphetamine, a lifestyle that has kept him away from the children. Based on the father's conduct, the district court properly found clear and convincing evidence established the father abandoned the children pursuant to Iowa Code section 600A.8(b)(3). *See M.M.S.*, 502 N.W.2d at 11 (noting total desertion is not required to establish abandonment).

Furthermore, though the father states he has been paying child support, this is not enough to overcome his complete lack of effort to maintain any sort of relationship with the children. A father's "contributions to his child's financial well-being do not overcome his complete abstention from fostering [the child's] physical, social, and emotional development." *C.A.V.*, 787 N.W.2d at 102. Another important consideration is that the father is still over $11,000 in arrears regarding his child support obligation. We further note that it was the children's paternal grandfather, as opposed to the father, who was the primary contributor to the father's support obligation.

Nor do we agree with the father's argument his payments of child support establish he lacked the intent to abandon the children. His last payment was in June 2013; furthermore, his individual contributions consisted of the government's garnishment of his income tax returns and wages. Rather, the children's grandfather provided most of the financial support. This lack of effort on the father's behalf to provide financial support to the children shows the father had the requisite intent to abandon. *See id.* (noting the parent must demonstrate

the intent to abandon the child in order to establish abandonment). Consequently, we conclude the district court properly found the mother proved by clear and convincing evidence the father abandoned the children, and that termination of his parental rights was proper pursuant to Iowa Code section 600A.8(3)(b).

## IV. Best Interests

Furthermore, we do not agree with the father's contention that termination of his parental rights is not in the children's best interests. The children are currently thriving, without having had any significant contact with the father for the vast majority of their lives. They do not share a bond with the father and he does not know anything of significance about their lives. Moreover, the father cannot maintain sobriety. The longest period in which he did not abuse methamphetamine—while not incarcerated—was nine months, over a period of nearly ten years. A parent's past behavior is indicative of his future behavior. *See In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). It is clearly not in the children's best interest to expose them to a methamphetamine-addicted father, particularly one with whom they share no bond and have little if any memory of him.

We also find it encouraging that, beyond thriving in their current environment, the children have a father-figure in the form of their step-father. He is very involved in their lives, shares a strong bond with each of them, and has demonstrated a desire to adopt them. The children would like to change their last names to reflect their step-father's last name.

Based on the foregoing, we conclude termination of the father's parental rights is in the children's best interest; therefore, we affirm the district court's order terminating the father's parental rights to K.B. and M.B.

**AFFIRMED.**