# IN THE COURT OF APPEALS OF IOWA

No. 15-0016
Filed July 22, 2015

IN THE INTEREST OF M.M.,
Minor Child,

S.D., Mother,
Appellant,

K.M., Father,
Appellee.

_____

Appeal from the Iowa District Court for Monona County, Timothy T. Jarman, District Associate Judge.

The mother appeals the juvenile court's grant of the father's petition to terminate her parental rights to her daughter, M.M. **AFFIRMED.**

Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant.

Kara L. Minnihan of Minnihan Law Firm, Onawa, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's grant of the father's petition to terminate her parental rights to her daughter, M.M. She asserts the father failed to prove she abandoned M.M. within the meaning of Iowa Code section 600A.8(3)(b) (2013), and termination is not in M.M.'s best interests. We conclude, given the mother has not seen M.M. in approximately five years and has made little to no attempt to contact M.M., the father met his burden of proof establishing the mother abandoned M.M. Furthermore, the mother has failed to meet her child support obligation without good cause, and termination is in M.M.'s best interests. Consequently, we affirm the order of the juvenile court terminating the mother's parental rights.

M.M., born December 2004, resides with the father and his wife. She was briefly in the mother's care after she was born. The mother and father have never been married but lived together while the mother was pregnant with M.M. According to the father, six months after M.M.'s birth, the mother and father left their shared residence and moved into the father's mother's house. Before M.M. was one year old, the mother left, and the father began to care for M.M. full time. He testified that before 2010 the mother would see M.M. approximately twice each year, and she had never attempted to contact him with regard to visitation.

The mother last saw M.M. in 2010. At the termination hearing, the following exchange occurred with regard to the mother's visitation of M.M.:

> Q: Have you attempted to contact [the father] to set up visitation in the last five years? A: Me and [the father] don't really have any communication. It's been mostly his wife that I message on Facebook or she'll message me. There's been times where I'll message her just to see how [M.M.] is doing. I haven't really—I

don't want to say that I haven't wanted to see her because I have, but I quit making attempts so often a couple years ago because I wasn't getting to see her, and I understand why I wasn't getting to see her, but—

Q: Why weren't you getting to see her? A: I wasn't at a point in my life where it was good for me to see her.

Q: And so it's safe to say for the last two years you have not attempted to make contact, correct? A: I think the last time I talked to [the father's wife] was probably about two years ago.

The father's wife testified she attempted to contact the mother to arrange visitation during the first few years of M.M.'s life, but the mother did not reply. She also testified the mother did not come to a few arranged visits.

On January 22, 2014, the mother was imprisoned in the Nebraska Corrections for Women due to misdemeanor convictions for carrying concealed weapons and obstruction of justice. The mother was set to be paroled in August, before the termination hearing; however, she was not released. The mother's counsel stated that the mother, "when she was up for parole, I believe [the reason the mother was not paroled] was . . . some type of infraction with the prison." The mother anticipated her release date was, as of the termination hearing, January 25, 2015, without parole.

The mother testified she intended to live with her mother after her release. She also stated that following M.M.'s birth she was homeless. The mother obtained her GED when in prison and her last employment outside of the prison was in 2011. At the termination hearing, she testified she suffered from a substance abuse issue before she was imprisoned. She has never received treatment.

The mother has been ordered to pay child support, and she is not current regarding that obligation. The Child Support Recovery Unit (CSRU) garnishes a

portion of her wages that she receives from working in the prison. Additionally, in June 2013, the mother won $25,000 from lottery tickets. The State garnished $11,000 from her winnings, which partially satisfied her child support obligation. The record establishes the mother has never voluntarily paid child support; rather, the child support that has been paid has been due to the CSRU recovering money from the mother's earnings or lottery winnings. According to the father's testimony, she remained six or seven hundred dollars in arrears.

The mother has another child, J.M., who is twelve years old. She resides with her biological father. The mother has been in contact with J.M. M.M. does not remember her half-sister, J.M., as they have not seen each other since M.M. was a young child. The mother testified that J.M. asks about M.M., and she wants the sisters to have a relationship. Both M.M.'s father and his wife testified they would be willing to facilitate a relationship between J.M. and M.M., even if the mother's rights were terminated.

The father petitioned to terminate the mother's parental rights on April 24, 2014, alleging the mother abandoned M.M. A contested hearing was held on October 20, 2014, in which the mother testified by phone from prison. On December 11, 2014, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 600A.8(3)(b). The mother appeals.

We review termination proceedings brought pursuant to Iowa Code chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We are not bound by the juvenile court's findings of fact, but we accord them weight, particularly with regard to its findings on the credibility of witnesses. *Id.* Our primary concern is the best interests of the child. *Id.*

With regard to the standard for the termination of parental rights, Iowa Code section 600A.8(3)(b)(1)–(3) states:

> The juvenile court shall base its findings and order under section 600A.9 on clear and convincing proof. The following shall be, either separately or jointly, grounds for ordering termination of parental rights:
>
> . . . .
>
> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
>
> . . . .
>
> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The record establishes the father has met his burden showing the mother abandoned M.M. within the meaning of Iowa Code section 600A.8(3)(b). As the juvenile court noted: "[The mother] has not demonstrated a genuine effort to maintain communication with the child in interest. [The mother] has not demonstrated the establishment and maintenance of a place of importance in the child's life." We agree. The mother admitted to not having contact with M.M. for the past five years. She further stated it was not in M.M.'s best interests to have contact with her given her lifestyle, which included substance abuse, criminal

activity, and homelessness. Therefore, the mother has not maintained "substantial and continuous or repeated contact with the child as demonstrated by . . . . Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child." *See* Iowa Code § 600A.8(3)(b)(1).

Furthermore, the mother has failed to contribute financial support for M.M. voluntarily. The mother remained in arrears at the time of the termination hearing, having essentially failed to ever voluntarily contribute money or items needed to care for M.M. As the juvenile court noted, the mother's "inability to pay support is the direct result of her choices related to substance abuse and other criminal behavior. The court does not find such poor life choices to constitute good cause for failing to contribute to the child's support." This conclusion is supported by the record. Consequently, the father met his burden showing the mother has not voluntarily contributed towards support of M.M. and has otherwise abandoned M.M. *See* Iowa Code § 600A.8(3)(b)(1)–(3).

It is also in M.M.'s best interests that the mother's rights are terminated. The mother admitted to not wanting to be in M.M.'s life for the past five years due to her behavior. Nor has the mother demonstrated she could maintain sobriety, employment, or a residence when not imprisoned. In determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006); *see also In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("We have repeatedly followed the principle that . . . children should not be forced to wait for their parent to grow up."). We further find it encouraging that M.M. has a mother figure in the father's wife, and that both M.M.'s father and his wife have

indicated they would be open to M.M. establishing a relationship with her half-sister, J.M. The mother acknowledged M.M. is loved by the father and his wife, they are "great parents," and M.M "is good where she is at. She is well taken care of." The record fully supports termination of the mother's parental rights is in M.M.'s best interests, and we affirm the order of the juvenile court terminating the mother's parental rights.

**AFFIRMED.**