**IN THE COURT OF APPEALS OF IOWA**

No. 16-0023
Filed February 22, 2017

**IN THE INTEREST OF T.A.,**
**Minor Child,**

**S.H., Mother,**
     Petitioner-Appellee,

**N.A., Father,**
     Respondent-Appellant.
_____


Appeal from the Iowa District Court for Linn County, Angeline M. Wilson,

District Associate Judge.


A father appeals the termination of his parental rights.  **AFFIRMED.**



Geneva L. Williams of Williams Law Office, P.L.L.C., Cedar Rapids, for

appellant father.

Thomas J. Viner of Viner Law Firm, P.C., Cedar Rapids, for appellee

mother.

Reyna L. Wilkens of Wilkens Law Office, Fort Madison, for minor child.



Considered by Danilson, C.J., Vogel, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MAHAN, Senior Judge.**

A father appeals from the termination of his parental rights under Iowa Code section 600A.8(3) (2015).  He challenges the court's conclusion that he abandoned his child and contends termination is not in the child's best interest. Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

The mother and father of T.A., born in 2010, have never been married.  In 2015, the mother filed a petition to terminate the father's parental rights, alleging he had abandoned the child.  *See* Iowa Code §§ 600A.8(3) (allowing the juvenile court to grant a petitioner's request to terminate a parent's rights if "[t]he parent has abandoned the child"); 600A.2(19) ("'To abandon a minor child' means that a parent . . . rejects the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.").

A contested hearing came before the juvenile court in December 2015. The mother testified a custody and visitation decree had been entered by the district court in 2012, which provided the father visitation with the child every Wednesday and every other weekend.  The father testified he did not exercise visitation consistently for "very long," and he acknowledged he had not had any visits with the child since February 2013.  He testified he tried "reaching out" to the mother to see the child since then, but he "ha[s]n't had her phone number" and he "d[id]n't know where she lives."  This was in contrast to the mother's testimony that she had the same phone number for four years (which she had

provided to the father), and that she had lived in the same house since before the child's birth until April 2015 (where the father had also lived for certain periods of time).

The court also heard testimony from the father his child support obligation was $10 per month. Yet, as of December 2015, he had paid only approximately $500 in child support during the child's life and had not provided any other support in terms of clothing, shoes, or school supplies. Other than the child's first birthday, the father agreed he had given the child no cards or presents. Although the father was unemployed at the time of the hearing, he described having at least four full-time jobs during the child's life.

The guardian ad litem (GAL) recommended termination of the father's parental rights, noting "in the last two-and-a-half years, he has not done anything to exercise [his visitation] rights," and although "[i]t may not have been [his] intent to abandon [the child], that is what his lack of action has boiled down to." The GAL further supported termination of the father's parental rights so the child could be adopted by the mother's boyfriend, who intended to adopt the child if the father's rights were terminated. As the GAL added, "[T]he person that [the child] views as her father is [the mother's boyfriend]."

In its thorough opinion, the juvenile court considered the credibility of the parties. The court noted:

> [The father] argues [the mother] prevented him from seeing [the child]. The Court cannot find any credible evidence that [the mother] prevented [the father] from visiting [the child]. [The father] testified repeatedly that he did not have [the mother]'s phone number and did not know where she lived and that is why he did not visit [the child]. The evidence in the case simply does not support his argument. [The mother] has the same phone number

she had when [the father] was contacting her to set up visits in 2013. [The mother] lived at the same address that [the father] had previously shared with her until April 2015. The fact that [the mother] blocked [the father] on Facebook for a period of time is not sufficient proof that he could not contact her regarding visitation. There is no real evidence that [the mother] did not respond to [the father]'s calls. Even if she did not always respond, the reality is that [the father] stopped attempting to arrange visits quite some time ago. If [the father] wanted to visit [the child], he had a court order and he was aware of the process to file a contempt action to enforce his rights under that order. Both [the mother of two of the father's other children] and [the father's girlfriend] testified they would have given [the father] the money to file a contempt action if he had asked.

If the Court did find that [the mother] did prevent visits, [the father] was still required to communicate with [the child] at least monthly unless prevented from so doing. Despite [the father]'s assertions he did not know where [the mother] was living, the evidence shows he did know (or should have known) where she and [the child] were living from [the child]'s birth until April 2015. [The father] did not send any cards or presents after visits stopped. [The father] was having contact with [the mother]'s brother during this time. [The father] did not attempt to give cards and/or presents to [the mother]'s brother to give to [the child].

The juvenile court ultimately terminated the father's parental rights on the grounds of abandonment, concluding: "The Court cannot not find [the mother] prevented ongoing communication, but does find [the father] failed to maintain regular and consistent contact with [the child]. Therefore, the Court finds by clear and convincing evidence that [the father] has abandoned [T.A.] as defined in Iowa Code section 600A.8." The father appeals.

## II.  *Standard of Review*

We conduct a de novo review of termination proceedings under chapter 600A. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). "We accord weight to the factual findings of the juvenile court, especially those regarding witness credibility, but we are not bound by them." *Id.* "The paramount concern in

termination proceedings is the best interest of the child." *Id.* (citing Iowa Code § 600A.1).

### III.    *Grounds for Termination*

The father challenges the court's conclusion that he abandoned his child. Section 600A.8(3)(b) deems a parent to have abandoned a child "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by" either of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

The father has not had any visits or contact with the child since February 2013. And despite his child support obligation being $10 per month, as of December 2015, the father had paid about $500 in child support during the child's life and has provided no other type of support. The record fully supports the juvenile court's findings that the father has not demonstrated any interest or ability to parent the child and, though capable of employment, has not provided for the needs of the child. There is clear and convincing evidence the father has abandoned his child as that term is used in chapter 600A.

### IV.    *Best Interests*

The father also contends termination is not in the child's best interest. Section 600A.1 states:

6

The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

The father has participated only minimally in the child's life and has failed to contribute to the support of the child. He has not "affirmatively assumed the duties of a parent" or demonstrated a "genuine effort" to maintain communication or establish and maintain "a place of importance in the child's life." Iowa Code § 600A.1.

We affirm the decision of the juvenile court terminating the father's parental rights under section 600A.8(3)(b).

**AFFIRMED.**