**IN THE COURT OF APPEALS OF IOWA**

No. 22-1396
Filed June 21, 2023

**IN THE INTEREST OF K.D.,**
**Minor Child,**

**R.D., Mother,**
        Petitioner-Appellee,

**R.P., Father,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, District Associate Judge.

A father appeals the termination of his parental rights under Iowa Code chapter 600A (2022). **AFFIRMED.**

Joseph C. Glazebrook of Glazebrook Law, PLLC, Des Moines, for appellant.

Jennifer Margaret Triner Olsen of Olsen Law Firm, Davenport, for appellee.

Dana L. Copell of the Law Office of Dana L. Copell, Davenport, attorney and guardian ad litem for minor child.

Considered by Badding, P.J., Buller, J., and Danilson, S.J.* Tabor, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DANILSON, Senior Judge.**

A father appeals the termination of his parental rights under Iowa Code section 600A.8(3)(b) (2022). He contends the juvenile court erroneously found he abandoned his child and failed to consider whether his "disability" "validly excuses the lack of physical visitation" he had with the child. Upon our review, we affirm.

## I.  *Background Facts and Proceedings*

The father and mother had a brief relationship in late 2008 to early 2009. The mother learned she was pregnant in February 2009. Shortly thereafter, the father moved to Illinois. They exchanged text messages "a couple times a month" during the pregnancy. Their child, K.D., was born in August. The father saw the child at the hospital after her birth. After that, the father had visits with the child approximately once per month at the mother's home in Camanche.

In early 2010, the father filed a petition to establish custody, physical care, visitation, and child support. He continued to see the child approximately once per month until June 2010, and then he did not have a visit again until August 2011. Following a hearing, the district court entered an order granting the mother sole legal custody and physical care of the child. The court observed the father had not provided financial support for the child or "exercised regular visitation or significant contact with the child since her birth" and the mother had been "the sole support of the parties' daughter." The court also noted K.D., who was "not quite two years of age," was "not familiar" with the father.[1]  The court established a graduated

---

[1] The court also observed the father "has sent angry text messages to [the mother] demonstrating animosity on his part toward [her] and a general disrespect for her as a person, and this affects her present ability to totally trust him with their daughter."

supervised visitation schedule for the father. Approximately four visits took place in the first few months after the decree was entered, none of which were overnight or unsupervised, and then the father stopped attending visits.

The mother filed an application for modification of the paternity decree, alleging that because the father had not "accomplished" the graduated schedule, it was "now necessary [for him] to have supervised visitation." In January 2012, the parties met with the court and agreed upon another graduated schedule. The father next saw K.D. in April 2012, when the mother brought the child to Illinois for a visit, and he has not seen her since. The mother and K.D. continue to live in Camanche. The father lives in Illinois. The mother married D.S. in 2014, and they had a child together, six-year-old M.S.

In 2022, the mother filed a petition to terminate the father's parental rights, alleging he abandoned the child. *See* Iowa Code § 600A.8(3) (2022). The mother further alleged termination of the father's parental rights was in the child's best interests "so that her step-father [D.S.] may legally adopt her." Following a hearing, the district court granted the petition. The father appeals.

## II.     Standard of Review

We review private terminations under chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We give weight to the district court's factual findings, particularly on credibility issues, but are not bound by them. *Id.* Our primary concern is K.D.'s best interests. *See id.*

## III.     Abandonment

"To abandon a minor child" means to "reject[ ] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able

to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* § 600A.2(20). A parent of a child who is six months or older

> is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>      (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>      (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>      (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b).

The father claims "[a]s an out-of-state non-custodial parent, [he] was in a difficult position."[2] He acknowledges "being behind overall in his child support

---

[2] He further alleges the court failed to consider whether his "disability" "validly excuses the lack of physical visitation" he had with the child. Specifically, he claims the court "effectively impos[ed] an unconstitutional exclusion of disabled parents from maintaining parental rights." This issue was not preserved for review. With regard to the father's health, the juvenile court observed the father "offered multiple reasons for why he did not exercise visitation over the years, including travel, health reasons, and financial reasons." (Internal citations to the record omitted.) The court also noted the father "claim[ed] this child is entitled to a portion of his disability [payments], but no evidence was offered to the Court concerning whether, when, and how the child would receive money, and no evidence was offered concerning any specific amount of money the child may receive from the government, in conjunction with the father's disability."
    Because the father's argument on appeal regarding his disability was neither raised nor decided by the court, it is not properly before us. *See State v. Derby*, 800 N.W.2d 52, 60 (Iowa 2011) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal."). Moreover, upon our de novo review of the record, we echo the court's observation

obligations" but argues he "did make efforts toward substantial compliance." We note at the time of the termination hearing, the father owed more than $19,000 in child support,[3] and he had never provided any medical support. The father further argues the mother "blocked" his "efforts to see his child, to thereafter have contact with his child, and to support his child." The record belies his claim. In the first year of K.D.'s life, the father saw the child only a handful of times. And during the midst of the custody case, which the father initiated in 2010, he did not see the child for over a year. The mother admitted she denied the father's request for a visit in November 2011, but she testified she did so because he skipped his visits in October. As the mother explained, "He wanted to take her . . . on the overnight visit, and I didn't feel comfortable with that because he hadn't fulfilled prior commitments to the visitation schedule" as ordered by the court.

The father last saw K.D. in 2012, when she was two years old. At the time of the termination hearing, K.D. was twelve years old. During that time, the father sent "infrequent" messages to the mother, "every couple of months"; "usually like rants" to "criticize [her] and [her] parenting" and threats about taking "court action" or "coming to [Iowa]." The father did not send cards or presents to the child, or otherwise communicate with her. The record shows the father knew where the mother and K.D. lived, because his early visits had taken place there and he had called the police to their home. He had not asked to see K.D. until recently,

that the issue raised below of the father's health was just one of many "countless excuses" why he has not actively participated in K.D.'s life. We agree we cannot disregard his disability, but that does not excuse his numerous other failures, such as his failure to communicate in writing or by cards, phone, or computer and his failure to provide support.

[3] At the time of the hearing, the father's child support obligation was $83 per month.

requests the mother did not honor because "it had been [ten] years since she saw him, and they had no relationship together at that point." The mother further explained she believed that any contact had to follow the graduated visitation schedule as agreed to by the parties and entered by the district court.

The juvenile court found the father's claims regarding his efforts to participate in the child's life were not credible and his statements in general to be "inconsistent and unreliable." We defer to the court's determination. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). As the court stated:

> [The father] made countless excuses regarding why he has not been an active participant in his daughter's life. All the excuses offered by [the father] are simply words. The Court finds it telling that [the father] has never, by his own admission, sent a letter, or birthday card, or birthday present, or Christmas present, to his daughter. [The father] clearly knows how to contact his daughter, as demonstrated in the [mother]'s exhibits. He knows where his daughter lives, he knows contact information for his daughter, and he knows how to reach many people in relation to his daughter. Yet, [the father] has not seen his daughter in over ten years. In her statement to the Court, the guardian ad litem reported she asked the child if there was anything the child wanted to say to [the father]. The child's response was, "Where have you been?" [The father], by his actions and lack of action over the past ten years, has demonstrated that he has nothing to offer this child financially or emotionally. [The father] offers nothing but empty words. [The father] has not assumed the duties of a parent, has not fulfilled his financial obligations, has not shown any real interest in the child, has not made any effort to initiate or maintain communication with the child, and has not established a place of importance in this child's life.

On our de novo review, we agree with the court that the father failed to maintain substantial and continuous or repeated contact with the child as described in any of the paragraphs set forth in section 600A.8(3)(b)(1)–(3).

"Once that threshold showing has been made," the mother "next must show by clear and convincing evidence termination of parental rights is in the best

interest of the child." *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018); *see also* Iowa Code §§ 600A.1, 600A.8. When considering a child's best interests, we consider the statutory best interest framework from Iowa Code section 232.116(2). *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010).

We determine termination of the father's parental rights is in the child's best interests. The father has no relationship with K.D. and last saw the child over ten years ago, when she was two years old. As the guardian ad litem observed, K.D. "doesn't know" the father; "[s]he couldn't pick him out of a lineup." *See id.* at 691 ("[I]t is significant that [the child] likely has no recollection of his father."). The mother testified the child has a "special bond" with D.S. and calls him "Dad," and D.S. wishes to adopt the child. *See In re J.G.*, No. 21-1836, 2022 WL 2347775, at *5 (Iowa Ct. App. June 29, 2022) (noting it was in the child's best interests to solidify a step-parent's role as caregiver when they had been performing that role for much of the child's life). Termination of the father's parental rights is in K.D.'s best interests.

**AFFIRMED.**