# IN THE COURT OF APPEALS OF IOWA

––––––––––––––––––

No. 25-1481
Filed March 11, 2026

––––––––––––––––––

**In the Interest of A.A. and T.A., Minor Children,**

**T.A., Father,**
Appellant.

––––––––––––––––––

Appeal from the Iowa District Court for Clinton County,
The Honorable Kimberly K. Shepherd, Judge.

––––––––––––––––––

**AFFIRMED**

––––––––––––––––––

Patricia Rolfstad, Davenport, attorney for appellant father.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney
General, attorneys for appellee State.

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,
Dubuque, attorney and guardian ad litem for minor children.

––––––––––––––––––

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to two children.[1] On appeal, he argues termination of his parental rights was not in the best interests of the children. Upon our review, we find termination was in the children's best interests and affirm the termination of the father's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

This family came to the attention of the Department of Health and Human Services (HHS) in September 2022 when four-year-old A.A. left the home multiple times without supervision and was found by law enforcement officers. A.A. and six-year-old T.A. were living in the home with their mother, three siblings, and the father of one of the siblings. A.A. and T.A.'s father was incarcerated at the time.

HHS's involvement continued when it received a report that the mother assaulted the father of one of the children. And during the HHS investigation of that incident, additional concerns emerged regarding the mother's use of cocaine, ecstasy, and alcohol—all of which the mother admitted.

In February 2023, the State filed petitions alleging A.A. and T.A., along with their other siblings, to be children in need of assistance (CINA) under Iowa Code section 232.96A(1), (2), (3)(b), (7) and (14) (2024). The children were adjudicated to be CINA in May 2023.

The children remained in the custody of their mother until January 2024, when they were removed for their protection. At that time,

---

[1] The mother's parental rights were also terminated, but she did not this appeal.

the children were placed with the father's paramour subject to a safety plan because the father remained incarcerated until April. But the children were removed from the paramour for violations of that safety plan in April and were returned to the custody of the mother.

Throughout this time, HHS attempted to build a relationship between the father and the children because he had not been involved with them for most of their lives. While HHS provided supervised visits between the children and the father, the children reported they were afraid of him and struggled to develop a relationship.

In July, the mother's struggle with substance use resulted in a relapse which caused the children to again be removed from her custody and placed in the custody of the father. The children remained with the father until January 2025 when a child abuse investigation was opened against the father. This investigation involved another child residing in the home with the father, his paramour, A.A., and T.A.

Once the investigation was opened, the father fled Iowa for Florida. The children were left with the father's paramour, and HHS was not informed of the father's absence. The father remained in Florida until he was arrested and extradited back to Iowa to face charges in April.

The State petitioned to terminate the parental rights of both parents under Iowa Code section 232.116(1)(a), (d), (e), (f), (i), (j), and (m). The matter proceeded to a hearing, and in August, the juvenile court granted the State's petition finding the State had proven grounds for termination of both parents' rights under Iowa Code section 232.116(1)(d), (e), (f), and (i). The father appeals.

3

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

## DISCUSSION

Our review follows a three-step analysis in reviewing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether statutory grounds for termination of the parent's rights exist under Iowa Code section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (following Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But when the parent does not raise a claim relating to any of the three steps, we need not address that step and instead limit our review to the specific claims presented. *See id.* at 40 (recognizing we need not consider a step the parent does not challenge). Here, the father does not challenge the statutory grounds for termination, and so we find the grounds exist under Iowa Code section 232.116(1)(d), (e), (f), and (i) as determined by the juvenile court.

Because the father only challenges the juvenile court's best-interests determination, we limit our discussion to that issue. To determine whether termination of parental rights is in the best interests of a child, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "We also look to the child's long-range as well as immediate interests. . . . [W]e look to the parents' past performance because

it may indicate the quality of care the parent is capable of providing in the future." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (cleaned up).

Upon our review of the record, we find termination was in the best interests of the children. First, the father's incarceration throughout the lives of these children, while not alone dispositive, weighs heavily in our analysis. The father's choice to "engage in crimes, resulting in his convictions and incarceration, at the expense of building a relationship with" his children weighs in favor of finding termination is in the children's best interests. *See In re C.A.V.*, 787 N.W.2d 96, 101–02 (Iowa Ct. App. 2010). Second, when the father had the opportunity to meaningfully parent the children, he declined to do so, instead fleeing to Florida to avoid being investigated for child abuse. And despite efforts from HHS, supervised visits did not result in a productive relationship between the father and children. The children reported the father's paramour did the parenting when they were placed with the father. Further, we agree with the district court's finding that the father also did not financially contribute to the care of these children. Given all of this we "cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (quoting *P.L.*, 778 N.W.2d at 40). Accordingly, we affirm the termination of the father's parental rights.

**AFFIRMED.**