# IN THE COURT OF APPEALS OF IOWA

No. 15-0579
Filed November 25, 2015

**IN THE INTEREST OF J.L.,**
**Minor Child,**

**M.H., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

The father appeals the termination of his parental rights to his child, J.L.

**REVERSED.**

Judd Parker of Parker Law Office, Clinton, for appellant father.

J. David Zimmerman, Clinton, for appellee mother.

Brian Donnelly, Clinton, attorney and guardian ad litem for minor child.

Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

The father appeals the termination of his parental rights to his child, J.L. He asserts the mother failed to prove by clear and convincing evidence he abandoned J.L. and, furthermore, that termination of his parental rights is not in J.L.'s best interests. We conclude the mother clearly proved the father abandoned J.L., given he failed to provide financial support and has had virtually no contact with J.L. since 2011. However, termination of the father's rights is not in J.L.'s best interests, primarily because there is no one standing in his place who is ready to adopt J.L. or otherwise provide financial assistance, a consideration under Iowa Code chapter 600A. Consequently, we reverse the order of the district court granting the mother's petition to terminate the father's parental rights.

## I. Factual and Procedural Background

The parents were not married but had been in a relationship for several years prior to J.L.'s birth, which was in June 2010. During J.L.'s infancy, the father assisted with J.L.'s care, such as feeding him and changing his diaper. The mother testified she had no concerns about J.L.'s safety while he was in the father's presence.

In March 2011, the parties separated, and communicated through Facebook until July 2011. The two had no further contact until the summer of 2014, when the father again began messaging the mother through Facebook. In August he called the mother and requested she drive him to Walmart so he could apply for a job. The mother agreed to help the father. Though the father did not specifically request to see J.L. that day, J.L. accompanied the mother. Due to

the passage of time, J.L. did not recognize his father. The visit lasted approximately one hour, and the father stated he carried J.L. on his shoulders while in the store, as well as bought him a present. Since he and the mother separated, this was the only contact the father had with J.L.

Additionally, from July 2010 until December 2014, the father failed to provide child support or otherwise financially assist the mother in raising J.L. A Child Support Recovery order was entered in January 2014, though the father stated he did not receive notice of the order until sometime later, in July or August. No evidence was entered showing he complied with this order, and the mother testified she did not receive any money.

There is conflicting testimony regarding the father's attempts to establish visitation with J.L. during the summer and fall of 2014. Both parties concede the father sent text messages to the mother mentioning his desire to visit J.L. However, the mother contends the father only contacted her while she was busy at work and could not speak with him. When she would tell him to contact her on her day off, he did not do so. She further testified the text messages contained expletives directed towards her, which prompted her to change her phone number. The father, however, denied that he ever sent derogatory messages and that, once the mother changed her phone number, he was prevented from attempting to establish visitation with J.L. He further stated the mother either did not respond to any of his earlier requests to visit J.L., or she denied them outright. The mother testified she changed her phone number in August or September 2014, which coincided with the time she filed the petition to terminate the father's rights.

For upwards of two years after the parties separated the father was homeless. He was fired after he became homeless, ostensibly due to basic hygiene issues.[1] He did not regain employment until 2014, when he began working at a retail store.

The mother's previous paramour, N.R., is the father of the mother's younger child. The mother and N.R. lived together from August 2011 until August of 2014, when they ended their relationship. J.L. calls N.R. "dad" and N.R. testified that, if his relationship with the mother improved, he would adopt J.L. The mother stated things would need to improve for her and N.R. to resume their relationship but asserted he could still be a father or father figure to J.L. She acknowledged they would need to be married for her to allow N.R. to adopt J.L. N.R. testified any future plans to adopt J.L. were contingent on improving his relationship with the mother, getting new jobs, and a new place to live.

On September 8, 2014, the mother filed a petition requesting the district court terminate the father's parental rights. A guardian ad litem was appointed for J.L., and he submitted a report to the court recommending the father's rights be terminated. The hearing was held on January 29, 2015, and the district court subsequently entered an order terminating the father's rights pursuant to Iowa Code section 600A.8(3)(b) (2013). With regard to the best-interests finding, the court stated:

> [The mother] is not married, and there is not contemplated a step-parent adoption at this time. However, the mother is

---

[1] We note the father's homelessness, and the downward spiral that occurs as a result of homelessness, creates many barriers to establishing a well-functioning life. We commend the father for overcoming this obstacle as well as regaining employment.

concerned about meeting the needs of the child and the fact that the father has had no contact with the child in so long.

[The mother] is a capable person to act as guardian and custodian of the child.

The father filed a motion to amend or enlarge, requesting the court expand its analysis regarding the best-interests prong; the court summarily denied the motion. The father appeals.

## II. Standard of Review

We review termination proceedings under chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We defer to the factual findings of the juvenile court, particularly with regard to witness credibility, but we are not bound by them. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). When interpreting chapter 600A, the best interest of the child involved is "the paramount consideration," but we also give "due consideration" to the interests of the child's parents. Iowa Code § 600A.1.

We further note the parent petitioning for termination pursuant to Iowa Code section 600A.8(3)(b) has the burden to show the other parent has abandoned the child. *See id.* § 600A.8(3)(b); *see also G.A.*, 826 N.W.2d at 129. The juvenile court's termination decision must be based on clear and convincing evidence. Iowa Code § 600A.8.

## III. Termination

A parent is deemed to have abandoned a child who is six months of age or older

unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b)(1)–(3).

A parent's subjective intent, "whether expressed or otherwise, unsupported by evidence of acts specified in paragraph 'a' or 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c). Abandonment is characterized as the "giving up of parental rights and responsibilities accompanied by an intent to forego them." *C.A.V.*, 787 N.W.2d at 99. If these grounds are proved by clear and convincing evidence, we must then determine whether the termination of the father's parental rights is in J.L.'s best interests; these considerations include the child's safety, the best placement for furthering his long-term nurturing and growth, as well as his physical, mental, emotional condition, and needs. *See id.* § 600A.1.

## A. Abandonment

The father first contends he did not abandon J.L. within the meaning of Iowa Code section 600A.8(3)(b). Though he admits he failed to pay child support, he argues this failure was due to the fact he was unemployed. He further blames his lack of contact with J.L. on his homelessness, asserting, "I didn't choose my path. It was chosen for me." Not wanting J.L. to see him under those circumstances, he did not pursue contact. But when he did attempt to

exercise visitation with J.L., he claims the mother changed her phone number and he was unable to contact her.

We agree with the district court the mother proved by clear and convincing evidence the father abandoned J.L. within the meaning of Iowa Code section 600A.8(3)(b). It is undisputed the father has not paid child support or otherwise contributed financially to the support of J.L., even when employed, thus proving one element of abandonment under the statute. *See id.* § 600A.8(3)(b). Furthermore, since 2011, the father has had only one brief encounter with J.L., in which J.L. did not recognize him as his father. It is therefore clear the father has failed to contribute financially as well as maintain contact with J.L., providing sufficient proof of abandonment under the statute. *See id.* § 600A.8(3)(b)(1).

Moreover, we do not agree with the father's contention that he was unable to contact the mother and J.L. due to his homelessness, or the fact the mother changed her phone number close in time to the filing of the petition. As the district court found: "The Court does not find the father's reasons for not having contact or providing support to the child as being credible." Particularly with regard to credibility determinations, we give weight to the findings of the district court. *See G.A.*, 826 N.W.2d at 127. Consequently, it is evident from this record the father abandoned J.L., as—without good cause—he failed to provide financial support or maintain substantial and meaningful contact with J.L. when financially and physically able to do so. *See* Iowa Code § 600A.8(3)(b)(1).

### B. Best Interests

The father next contends termination of his parental rights is not in J.L.'s best interests. He asserts J.L.'s long-term interests are served by the father

being present in J.L.'s life, providing financial support, as well as having the benefit of the father's extended family. He further argues the district court's lack of specific findings regarding the best-interest determination fails to satisfy the statute and case law that require this to be a separate and distinct determination.[2]

Though the father has clearly abandoned his child, we nonetheless agree with the father's argument on this point. A child has a right to be supported by the parent; thus, it is generally in the child's best interests that two parents are financially responsible for providing for him. *See In re J.L.W.*, 496 N.W.2d 280, 282–83 (Iowa Ct. App. 1992) (holding termination of the father's rights was not in the child's best interests, given the father was obligated to support the child and no other parent expressed an interest in adoption); *see also In re B.L.A.*, 357 N.W.2d 20, 24 (Iowa 1984) (finding termination of the father's parental rights was in child's best interest, as the mother's husband intended to adopt the child). Though N.R. testified he would adopt J.L., both he and the mother stated this was contingent on their relationship improving, which had ended several months prior to the termination hearing. Therefore, if the father's rights are terminated, there is no one standing in his place, ready to adopt—and financially support— J.L., rendering termination not in his best interests. *See In Re H.S.*, 805 N.W.2d 737, 747-48 (Iowa 2011) (comparing and contrasting the best interests tests,

---

[2] While the district court touched on the best-interests prong, we find the brief analysis insufficient to meet the standard developed in our case law, which requires specific findings that termination is in the child's best interests. *See In re D.W.K.*, 365 N.W.2d 32, 34–35 (Iowa 1985) (noting the best interests of the child must be a separate and distinct finding). Nonetheless, because we conclude termination is not in J.L.'s best interests, we need not reverse on this ground.

under Iowa Code sections 600A.1 and 232.116, noting, "While taking child support directly into account under chapter 600A makes sense because that is a private termination statute, and thus a component of our domestic relations law, section 232.116 addresses the typically more urgent situation in which a child is at a high degree of risk"); *In re K.J.K.*, 396 N.W.2d 370, 371–72 (Iowa Ct. App. 1986) (considering the child's right to financial support from the father when determining it was not in the child's best interest to terminate the father's parental rights under chapter 600A).

Additionally, it is undisputed the father is neither dangerous nor an improper caretaker for J.L. As the mother testified, during the first few months of J.L.'s life the father was an adequate parent. He does not have a criminal history and has not demonstrated that he possesses a violent disposition. Though it is clear the father—for several years—expressed little to no interest in being an involved parent, these previous considerations do not indicate that it is in J.L.'s best interests the father's rights be terminated. *See generally In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998) (holding it was in the best interest of the child that the father's rights be terminated, particularly given the father's violent disposition and extensive criminal history). Moreover, as of the time of the termination hearing, the father was employed and no longer homeless.

For these reasons, we reverse the order of the district court granting the mother's petition and terminating the father's parental rights.

**REVERSED.**