**IN THE COURT OF APPEALS OF IOWA**

No. 15-0789
Filed August 31, 2016

**IN THE INTEREST OF R.C.,**
**Minor Child,**

**L.B., Mother,**
 Petitioner-Appellee,

**R.E.C., Father,**
 Respondent-Appellant.
_____

 Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

 A father appeals the juvenile court's grant of the mother's petition to terminate his parental rights to their seven-year-old daughter. **AFFIRMED.**

 Monte M. McCoy of McCoy Legal Services, Centerville, for appellant father.

 Robert F. Bozwell, Jr., of Bozwell Law Office, Centerville, for appellee mother.

 Mary B. Krafka of Krafka Law Office, Ottumwa, guardian ad litem for minor child.

 Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

An incarcerated father appeals the termination of his parental rights to his seven-year-old daughter, R.C. The juvenile court granted the mother's petition to terminate his rights under Iowa Code section 600A.8(3) (2013). The father argues: (1) the mother failed to offer sufficient proof he abandoned R.C. and (2) termination of his parental rights was not in R.C.'s best interests. Because the father has not maintained a position of importance in his daughter's life, we affirm the juvenile court's decision.

## I.    Facts and Prior Proceedings

The mother and father married in 2007 and had one child together, R.C., who was born in April 2009. The father struggled with alcohol abuse, and in late January 2010, he assaulted the mother while under the influence of alcohol. He was arrested on charges of second-degree burglary and domestic abuse assault causing injury.[1] This incident was not the first time the father's alcohol use led to his incarceration, nor was it his last. The thirty-year-old father has been convicted of operating while intoxicated (OWI) six times, and since R.C.'s birth, he has been in jail at least five times and in prison twice. The mother and father separated after the assault, briefly reconciled, and then permanently parted ways in May 2012.

The mother filed for divorce, but before the court entered the dissolution decree, the father was arrested and then incarcerated after pleading guilty to felony-level OWI. The court directed the mother to arrange for the father to be

---

[1] The charges were dismissed due to the State's failure to bring the father to trial within one year.

represented by a guardian ad litem, but because she could not afford to provide such representation, the mother dismissed the petition with the intent to refile after the father's release.

During the 18 months the father was in prison, he failed to contact R.C. or her mother with the exception of a single Christmas gift he sent to his daughter in 2013. After his release in February 2014, the father moved in with a girlfriend who lived across the street from R.C. and her mother. Despite the close proximity, he made no attempt to contact the mother about a visit with R.C.

From across the street, the mother saw the father drinking alcohol and driving with children in the car after he had been drinking. She reported her observations to the police, and the father moved away shortly thereafter.

The mother filed another petition for divorce in March 2014. The father sought orders for temporary visitation with R.C. Over the objection of the mother, the court granted the father's request in July. In August, the father had three supervised visits with R.C. It was the first time he had seen R.C. in more than two years, and she did not initially recognize her father.

Then on August 15, the father was again arrested for OWI. At the time of his arrest, the father was driving with a sixteen-year-old friend as his passenger. The father pleaded guilty and did not expect to be released from prison until November 2016.

In 2012, the mother began a relationship with another man, J.B. They have six children between them, including one child in common. They are both employed and share the responsibility of caring for the children. Although J.B. was married to someone else at the time of the termination hearing, he testified

he was in the midst of divorce proceedings, and once his divorce was final, he intended to marry the mother and adopt R.C.

The mother filed this action to terminate the father's parental rights after the father's most recent incarceration. Following a hearing, the juvenile court terminated the father's parental rights under section 600A.8(3)(b). The father now appeals.

## II. Standard of Review and Statutory Burden

We review termination-of-parental-rights proceedings under chapter 600A de novo. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). We are not bound by the juvenile court's fact-findings, but we give them weight, particularly when considering witness credibility. *Id.*

The parent seeking termination has the burden to prove by clear and convincing evidence the other parent has abandoned the child. Iowa Code § 600A.8(3); *see also In re G.A.*, 826 N.W.2d 125, 128–29 (Iowa Ct. App. 2012). The petitioning parent must also prove termination of parental rights is in the best interests of the child. *In re R.K.B.*, 572 N.W.2d at 602. Although the best interests of the child are "paramount," we also give the interests of the parents "due consideration." Iowa Code § 600A.1.

## III. Analysis

**Abandonment.** The father argues the mother failed to prove by clear and convincing evidence he intended to abandon R.C. He contends he wants to be a part of R.C.'s life and has demonstrated this by visiting R.C. and providing financial support within his means since his separation from the mother. We disagree with the father's argument.

The Iowa Code defines abandonment of a minor child as a parent "reject[ing] the duties imposed by the parent-child relationship" and "making no provision or . . . only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* § 600A.2(19). We consider a parent to have abandoned a child of six months or older "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means," and by (1) visiting the child at least once a month when physically and financially able and when not prevented by the child's custodian or (2) regularly communicating with the child or custodian when physically and financially unable to visit or when prevented by the child's custodian—if the parent has not lived with child in the year before the termination hearing. *Id.* § 600A.8(3)(b). A parent's subjective intent, unsupported by any of these actions, "does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

"[T]he threshold element of 'substantial and continuous or repeated contact' is economic contributions." *In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015) (citing *In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (discussing "predicate language of section 600A.8(3)(b)")). The father has met this threshold requirement. Although his personal contact with R.C. has been minimal in the last few years, the father has made child support payments since October 2010. To date, he has paid a total of $2654.43 through

mandatory wage assignment.[2] While this amount falls well short of adequately supporting R.C., the father has consistently made payments within his means when he hasn't been incarcerated.

But despite these support payments, we find clear and convincing evidence the father has abandoned R.C. under sections 600A.2(19) and 600A.8(3)(b). *See In re C.A.V.*, 787 N.W.2d 96, 102 (Iowa Ct. App. 2010) (finding contributions to child's financial well-being do not excuse lack of genuine effort to maintain association with the child). As the juvenile court aptly noted, the father "has been his own worst enemy in his attempts to be a parent to R.C." The principal reason the father has been unable to maintain a relationship with R.C. is his own repeated incarceration. Time and again, the father has made the choice to drive after consuming alcohol. His resulting incarcerations do not justify his lack of relationship with R.C. *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993); *see also In re M.B.W.*, No. 12-2161, 2013 WL 3273170, at *2 (Iowa Ct. App. June 26, 2013) (noting father's "conscious choice to engage in misconduct, resulting in two felony convictions, and six probation violations since he became a parent, suggests the children have not been his priority and he does not promise to be a positive influence on their futures"). Nor is incarceration an excuse for his failure to communicate with R.C. *See In re C.A.V.*, 787 N.W.2d at 101–02. The father has made almost no effort to keep in touch with his daughter while in prison. He has not written to R.C. or sought permission from the mother to call her, and he has not tried to set up visits with R.C. at the prison.

---

[2] The record is unclear on the dollar amount of the father's support obligation, but the father testified at the hearing—and the mother did not dispute—he had never been subject to a contempt action for failure to pay child support.

Further supporting the mother's petition, the father made negligible attempts to interact with R.C. when he was out of prison. The father did not visit or communicate with R.C. in the time between his separation from the mother in May 2012 and his subsequent incarceration. He has visited R.C. just three times since 2012, and it was only after the mother re-initiated divorce proceedings that the father requested that visitation. He claims he did not try to contact the mother sooner because she had refused to speak with him and would not give him her phone number, but we find this argument unconvincing. Even without a phone number, the father could have attempted to contact the mother in person or through the mail, particularly since he lived just across the street from R.C. and her mother after his February 2014 release from prison.

The father's overall conduct demonstrates his intent to relinquish his parental rights. While he has provided limited child support over the years, these contributions cannot overcome his anemic attempts to remain a part of R.C.'s life. *See id.* at 102. Therefore, we affirm the finding of abandonment under section 600A.8(3)(b).

**Best Interests of the Child.** The father also argues termination of his parental rights would not be in R.C.'s best interests. "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1. In determining a child's best interests, we consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.*

Our supreme court has also cited as a guide the best-interest analysis of Iowa Code section 232.116(2) and (3),[3] which includes consideration of the physical, mental, and emotional needs of the child as well as the strength of the parent-child bond. *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010).

Like the juvenile court, we conclude termination of the father's parental rights is in the best interests of R.C. First, as previously discussed, the father has had only minimal contact with R.C. since he separated from the mother in 2012. When the father finally had a visit with R.C. in August 2014—more than two years after he had last seen or spoken with her—R.C. did not recognize him. And the father lacked familiarity with his daughter. He didn't know what R.C. enjoyed doing in her free time, what her favorite food was, who her teacher was, or whether she went to church. His near-complete absence from her life prevented the development of any meaningful parent-child bond.

The record also demonstrates the father has failed to address his alcohol abuse, making recurring destructive behavior more likely. *See In re M.B.W.*, 2013 WL 3273170, at *3 (finding father's history of substance abuse, criminal activity, and failure to support children indicative of future behavior). The father testified to a desire to change his lifestyle, but his conduct up to this point has not reflected that desire. We cannot deprive a child of permanency and stability "by hoping someday a parent will learn to be a parent and be able to provide a stable

---

[3] Iowa Code section 232.116(2) lists considerations "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Section 232.116(3)(c) allows the court to refrain from termination if it finds with "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

home for the child." *In re A.H.B.*, 791 N.W.2d at 691 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)).

Moreover, for the past four years, R.C. has been raised by the mother and J.B., the man R.C. views as her father. By all accounts, a close bond exists between J.B. and R.C. The guardian ad litem noted R.C.'s complete integration into the new family unit, and J.B. testified he wished to adopt R.C. We agree with the juvenile court's assessment that termination of the father's rights and the possibility of adoption would be in R.C.'s best interests.

The father also maintains termination of his parental rights would deprive R.C. of the benefit of having a relationship with her half-sibling, N.C. N.C., the father's ten-year-old son from a previous relationship, came with the father to the August 2014 visits with R.C. N.C. and R.C. developed a relationship in the first few years of R.C.'s life, and R.C. considers N.C. to be her brother.

We have long recognized the importance of fostering relationships between siblings and half-siblings. *See, e.g.*, *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). But the record establishes it has been the mother, not the father, who has fostered the relationship between R.C. and N.C. in the intervening years since she and the father separated. The mother testified she believed contact between R.C. and N.C. was in R.C.'s best interests and she would continue to ensure their interaction. We find the mother has effectively protected the sibling relationship between R.C. and N.C. *See In re C.J.F.M.*, No. 10-0166, 2010 WL 3157756, at *4 (Iowa Ct. App. Aug. 11, 2010) (finding termination in child's best interests when petitioning parent maintained child's relationship with half-siblings).

Accordingly, we affirm the decision of the juvenile court terminating the father's parental rights.

**AFFIRMED.**