**IN THE COURT OF APPEALS OF IOWA**

No. 16-1469
Filed December 21, 2016

**IN THE INTEREST OF R.R.,**
**Minor child,**

**J.R., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Peter B. Newell, District Associate Judge.

The father appeals from the juvenile court's order terminating his parental rights. **AFFIRMED.**

Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for appellant father.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Crystal L. Ely of North Iowa Youth Law Center, Mason City, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

A father appeals the termination of his parental rights to his child born in 2011.[1] The juvenile court terminated his parental rights pursuant to Iowa Code section 232.116(1)(e) (2015). He argues his parental rights should not have been terminated because he did not have an attorney during the underlying child-in-need-of-assistance (CINA) proceeding and the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunify him with the child. He further contends his parental rights should not have been terminated as the child was placed with a relative and the trial court should have granted his request for a six-month extension for reunification. We affirm.

## I. Background Facts and Proceedings.

The family first came to the attention of DHS in late 2015 when the child's mother and her fiancé engaged in domestic violence while the child was present in the mother's home. The father was served with notice of the CINA proceeding; however, he did not participate. The child was adjudicated a CINA on December 3, 2015, and a dispositional hearing was held on January 4, 2016. The father did not attend either hearing. The juvenile court ordered the child's custody to remain with the mother and ordered DHS to initiate services for the family.

DHS sent monthly letters over several months to the father; however, the father never responded to them. At the termination hearing, DHS and Family Safety, Risk, and Permanency (FSRP) workers testified they attempted to

---

[1] The mother's parental rights have not been terminated, and she is not a party to this appeal.

contact the father by letter, text messaging, and telephone calls, usually to no avail. The father contends he did attempt to contact DHS and FSRP workers a few times.

At the May 12 dispositional review hearing, the father asked the court for a continuance so he could apply for court-appointed counsel. The court granted the continuance and reset the hearing for May 26. The father neither applied for counsel nor appeared at the hearing.

The State filed the petition for termination of the father's parental rights on July 17, 2016, and the father applied for court-appointed counsel on July 19. The court appointed counsel on July 21, and the termination hearing was held on August 18.

At the termination hearing, the father testified he resided with the child and the mother during the first year of the child's life. After that time, the father then had regularly scheduled visitation, which continued until a no-contact order was put in place due to various alleged domestic violence incidents between the father and the mother.

The father acknowledged he had not seen the child since December 2015. He admitted he had no contact with the child since then but maintained he had a "shed-full" of presents for the child. He testified he does not send the child cards because the child cannot read them. He also admitted he does not pay child support despite a child-support order, nor does he provide any other financial support for the child.

The father also acknowledged he had not completed any services through DHS, including the recommended mental-health and substance-abuse

evaluations. However, he testified that if the court should grant him a six-month extension, he would do whatever DHS or the court asked of him.

The father appeared at the termination hearing and testified. However, he was at that time being held in the county jail with two pending criminal charges and had been there for approximately thirty days. It is unclear what, if any, additional jail time he would face.

On August 22, 2016, the court entered an order terminating the father's parental rights. The petition sought termination on three different statutory grounds;[2] however, the juvenile court terminated the father's parental rights under section 232.116(1)(e), which allows the court to terminate when a child has been adjudicated in need of assistance, the child has been removed from the parent's physical custody for at least six consecutive months, and the parent has not maintained significant and meaningful contact with the child during that period and has made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

The father appeals.

## II. Standard of Review.

We review the juvenile court's decision to terminate parental rights de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). In doing so, we apply the three-step analysis:

> The first step is to determine whether any ground for termination under section 232.116(1) has been established. If we find that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we

---

[2] The petition for termination cited to Iowa Code section 232.116(1)(a), (e), and (f).

do find the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.

*Id.* at 219–20 (citations omitted). The district court's factual findings are not binding on us, but we afford them weight, particularly with regard to witness credibility. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

**III. Discussion.**

### A. Lack of Representation

The father first argues the order terminating his rights should be reversed because he was not represented by an attorney during the underlying CINA proceeding.

The Iowa Code provides statutory bases for parents' rights to counsel at different proceedings under the juvenile sections of the code. *See* Iowa Code § 232.89(1) (providing a right to counsel in CINA proceedings); Iowa Code § 232.113(1) (providing a right to counsel in termination proceedings).

At the August termination hearing, the father's appointed counsel went on the record to say that he had not represented the father in the underlying CINA proceedings and the father had not had any representation; however, that was the extent of it. The May 12 hearing was continued so that the father could obtain counsel; however, he failed to do so and missed the reset hearing on May 26. Because the father was afforded the opportunity to obtain counsel and did not, we conclude his claim has no merit. We decline to discuss this issue further.

**B. Termination under Section 232.116(1)(e)**

The father next maintains the trial court erred in terminating his rights because the State failed to prove the grounds for termination by clear and convincing evidence. *See, e.g.,* Iowa Code § 232.116(1)(e) (requiring clear and convincing evidence). Specifically, he argues the State failed to prove its case because the father maintains DHS did not give him an opportunity to follow through with significant and meaningful contact with the child nor to resume caring for the child. He contends the juvenile court should have given him an additional six months toward reunification.

The court terminated the father's rights under Iowa Code section 232.116(1)(e), and his argument seems to center only on the "significant and meaningful contact" and "reasonable efforts" portions.

Under section 232.116(1)(e)(3),

> "[S]ignificant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

In this case, the father admitted he had not seen the child in approximately nine months, had made no effort to contact the child, did not financially support the child, and had not attempted to initiate visitation with the child during that time. The father's lack of significant and meaningful contact with his child is due to his own inaction.

Furthermore, the testimony from both DHS and FSRP workers indicates the father was not only personally served with notice of the CINA and termination proceedings, monthly letters were sent to him. The testimony also indicated the father was called on the telephone and sent text messages. DHS and FSRP workers could not initiate services with the father because the father remained unresponsive to their communication requests. Additionally, the father refused to complete the mental-health and substance-abuse evaluations recommended to him. Under the circumstances, DHS attempted to provide the father with resources but the father refused; DHS's efforts were thwarted by the father's lack of cooperation.

While the father asserts he should be given an additional six months to work toward reunification, his past behavior does not indicate that the situation will be different in the near future. Under Iowa Code section 232.104(2)(b) , the court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." At the time of the termination hearing, the father was incarcerated, facing two criminal charges. Although the father testified he may be released from jail with "credit for time served," there is no guarantee. Additionally, it is unclear whether the father will actually complete any services provided to him by DHS. A child should not be asked to continuously wait for a stable biological parent, particularly when the child is of a tender age. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

The father next asserts that his parental rights should not have been terminated because the child was placed with a relative. The father argues that

placement of the child with the child's mother weighed against termination, as there "is no need and there is certainly no harm to the child if the parental rights of the father were not terminated."

Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. "A finding under subsection 3 allows the court not to terminate." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).

The juvenile court found none of the permissive factors in subsection 3 should be applied, and we agree. While subsection 3 allows the juvenile court not to terminate when "a relative has legal custody of the child," which is the case here because the child lives with the mother, we are not inclined to find preserving the father and child's relationship is in the child's best interests. We find termination is in the child's best interests and no permissive factor weighs against termination.

Based on the foregoing, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**