# IN THE COURT OF APPEALS OF IOWA

No. 18-0280
Filed September 12, 2018

**IN THE INTEREST OF G.M.,**
**Minor Child,**

**D.V., Father,**
    Respondent-Appellant,

**S.S., Mother,**
    Petitioner-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D.

Fagan, District Associate Judge.

The father appeals from the termination of his parental rights pursuant to

Iowa Code chapter 600A (2017). **AFFIRMED.**

Sara E. Benson of Benson Law, PC, Council Bluffs, for appellant father.

Leslie A. Christensen, Omaha, Nebraska, for appellee mother.

Maura C. Goaley, Council Bluffs, attorney and guardian ad litem for minor

child.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

The father appeals the termination of his parental rights to his child, G.M. The father maintains there is not clear and convincing evidence he abandoned his child within the meaning of Iowa Code section 600A.8(3)(b) (2017) and termination is not in the child's best interests.

We review private termination proceedings de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We give deference to the factual findings of the juvenile court, especially those related to witness credibility. *Id.* As always, our primary concern in a termination proceeding is the best interests of the child at issue. Iowa Code § 600A.1.

The court may terminate the non-petitioning parent's parental rights if it finds clear and convincing evidence the parent has abandoned the child, within the meaning of section 600A.8(3). Section 600A.8(3)(b) provides, in pertinent part:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.[1]

---

[1] We have not included subparagraph (3), which indisputably does not apply here, as it pertains to a parent who has lived with the child within the previous one-year period.

The petitioning parent bears the burden to establish the grounds for termination. *See In re R.K.B.*, 572 N.W.2d 600, 601–02 (Iowa 1998).

The father maintains he did not abandon G.M. The father had never provided any financial support for the child and had yet to meet five-year-old G.M. at the time of the termination hearing; the father does not dispute the lack of support, but as to contact with the child, he claims the mother thwarted his attempt to have a relationship with him.

The district court did not find the father's testimony credible, and neither do we. Except a short period of a month or two, the mother has maintained contact between G.M. and members of the father's family, including the father's child from another relationship. The paternal grandmother testified she is able to see G.M. whenever she chooses. Additionally, according to the mother, she has maintained the same cell phone number since before she and the father started dating.

The father's long-term drug addiction and resulting incarceration are the more credible culprits for preventing a relationship between G.M. and the father. The mother testified that the father, who began using drugs at age twelve, relapsed on methamphetamine during the mother's pregnancy with G.M. The mother ended the relationship before G.M. was born, and the father became incarcerated when G.M. was approximately four months old—in January 2013. The father remained incarcerated until October 29, 2014. Less than five months later, the father was sent to prison, where he remained at the time of the termination hearing in December 2017. While the father now claims he would like to have the chance to have a relationship with G.M., the father has done a negligible amount to establish that relationship during the first five years of G.M.'s life. The father testified he

"believe[d] there might have been a stuffed animal one time" that he gave to the paternal grandmother to give to G.M.  Otherwise, the paternal grandmother testified the father had sent one letter to her home that he wanted the mother to receive.  We understand the father's incarceration created barriers to providing financial support and keeping in contact with G.M., but "a parent 'cannot use his incarceration as a justification for his lack of relationship with the child.'"  *In re C.A.V.*, 787 N.W.2d 96, 102 (Iowa Ct. App. 2010) (citation omitted).  We agree with the district court that there is clear and convincing evidence the father abandoned G.M.; the threshold requirement has been met.

Next, we must consider whether termination of the father's parental rights is in G.M.'s best interests.  *See In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018) (describing the "two-step process" of termination proceedings under chapter 600A).  The father and G.M. have no bond, as the father has never met or spoken with G.M.  *See id.* at 772 ("We give weight to the closeness of the parent-child bond.").  The father has a history of felony convictions—"probably about five," according to the father's testimony—and will not discharge his current sentence of imprisonment until March 2021.  The father's brother testified the father began using drugs at age twelve and the longest period the father has been sober since that time (while not incarcerated) is one and one-half years, which took place before G.M.'s birth.  *See id.* at 773 ("We have recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").  Although the brother believes the father has made progress during this stint of incarceration because the father now verbalizes that he cannot spend time with drug users and remain sober, we have no other indication of the steps the father

has taken to address his long-term addiction or criminality. *Cf. id.* at 773 (noting the father's "good prison record" as weighing against termination because the father had not "had any major behavioral problems and has completed prison courses involving parenting and anger management"). Additionally, G.M. refers to his stepfather as "dad." The stepfather is the only father G.M. has ever known, as the mother and stepfather began their relationship when G.M. was six months old and married approximately three and one-half years before the termination hearing. The stepfather wishes to adopt G.M.; he has provided for G.M. both financially and emotionally for almost G.M.'s entire life. *See id.* at 772 ("Another factor to consider is the fact that a stepfather is willing to provide for the children's needs and is willing to adopt the children.").

The father compares the recently decided supreme court case *Q.G.* with his circumstances and maintains that like in *Q.G.*, the facts do not establish that the best interest of the minor child will be advanced by the termination of the father's rights. *Id.* at 774. We disagree. While there are a number of similarities between the two cases, each involving an incarcerated father, "the caselaw has limited utility" in determining the best interests of each individual child. *See id.* at 771. Moreover, the differences between *Q.G.* and the present facts militate for termination. Here, the father may be incarcerated for another number of years; the mother and father did not enter into a stipulation or agreement about the father's relationship with G.M. going forward, and unlike the limited contact between the incarcerated parent and the children in *Q.G.*, there has been no contact between G.M. and the father at any point in G.M.'s life. *See id.* at 772–73.

While the father's interests require "due consideration," *see* Iowa Code § 600A.1, termination of his parental rights is in G.M.'s best interests. We affirm.

**AFFIRMED.**