# IN THE COURT OF APPEALS OF IOWA

No. 22-0467
Filed December 21, 2022

**IN THE INTEREST OF M.K.,**
**Minor Child,**

**M.M., Father,**
    Petitioner-Appellee,

**K.K., Mother,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

District Associate Judge.

A mother contests the termination of her parental rights in a private

termination case. **AFFIRMED.**

Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

Melissa A. Nine of Nine Law Office, Marshalltown, for appellee.

Mary Cowdrey, Marshalltown, attorney and guardian ad litem for minor

child.

Considered by Bower, C.J., Tabor and Buller, JJ.

**TABOR, Judge.**

A mother, Kisha, appeals the juvenile court's order terminating her parental rights to now six-year-old M.K. Kisha argues that the father, Michael, did not offer clear and convincing evidence that she abandoned their daughter under Iowa Code sections 600A.2(20) and 600A.8(3)(a) (2022). Because Michael proved that Kisha's unabated use of methamphetamine and unaddressed mental health needs prevented her from having safe interactions with M.K., we affirm the termination of parental rights.

## I. Facts and Prior Proceedings

M.K. was born in 2016. She was Kisha's fourth child.[1] Kisha was never married to Michael and they parted ways before M.K. was born. In fact, M.K. was three years old before Michael's paternity was established.

Following M.K.'s birth, Kisha lived with her grandmother. But when M.K. was just four months old, she was placed in foster care after Kisha experienced "methamphetamine psychosis." Once properly medicated, Kisha regained custody of M.K. Their reunification continued until October 2018 when Kisha, while high on methamphetamine, assaulted her father with M.K. in her arms. The juvenile court adjudicated M.K. as a child in need of assistance (CINA). Since then, M.K. has remained mostly in Michael's care.[2]

---

[1] In 2015, Kisha had a son who tested positive for methamphetamine at birth. Her rights to that child were terminated. In retrospect, she acknowledged that adoption was in that child's best interests. In her words, "I didn't feel like I could protect him." She also had two older sons, aged twenty-three and seventeen, but had fallen out of contact with them.

[2] For a short stint, M.K. stayed with her grandmother after Michael, under the influence of alcohol, assaulted Kisha. Michael then underwent treatment and proved his stability.

Michael, who is older than Kisha, is on disability after suffering a heart attack.[3] He lives with M.K. in an apartment.. The CINA case closed in 2020, and under a bridge order, Michael received sole custody of M.K. That order gives Michael discretion whether to allow Kisha to visit M.K.—given Kisha's struggles with substance abuse, mental health, and criminality.[4]

In July 2021, Michael petitioned for termination of Kisha's parental rights, alleging she abandoned M.K. On the same day, he petitioned for a protective order against Kisha, alleging that she had assaulted him and his sister in M.K.'s presence. In August, the court issued an order prohibiting Kisha from having contact with Michael. Kisha testified that she did not believe that the order prevented her from having contact with M.K., so she went to the child's elementary school to "give her a hug" in September 2021. Yet police charged Kisha with violating the protective order. And the next day, another order issued prohibiting Kisha from having contact with M.K. while the criminal case was pending.

In early December 2021, the juvenile court heard testimony from Michael and Kisha at the termination trial. Michael testified that he was pursuing termination "[b]ecause if something would happen to me [M.K.] would go right back to her mom, and then she would end up right back in the system placed with another family, and I don't want that." In contrast, Kisha told the court: "I'm a good

---

[3] At the time of the termination hearing, Michael was sixty-two years old, Kisha was forty-four.

[4] Kisha's criminal history includes trespass, theft, assaults, operating while intoxicated, driving under suspension, criminal mischief, and possession of methamphetamine.

mom, and I want my daughter to be with me." In late December, the court issued its order terminating Kisha's rights. She now appeals.

## II. Scope and Standard of Review

Iowa Code chapter 600A governs petitions filed by one parent to terminate the rights of the other parent, so-called "private" terminations. *In re B.H.A.*, 938 N.W.2d 227, 232 (2020). The petitioner, Michael, has a two-pronged burden. *See id.* First, he must prove by clear and convincing evidence that Kisha abandoned M.K. *See* Iowa Code § 600A.8(3)(b). Second, he must show termination is in the child's best interests. Iowa Code § 600A.1; *B.H.A.*, 938 N.W.2d at 232. We review private termination proceedings de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We give weight to the juvenile court's fact findings, especially when addressing witness credibility, but we are not bound by them. *Id.*

## III. Analysis

### A. Abandonment

Kisha contends that Michael did not prove that she abandoned M.K. under section 600A.8(3). That statute requires proof that she did not maintain "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount," according to her means, and as shown by any of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of

parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b).

### 1. Reasonable Financial Support

First, we consider Kisha's economic contributions.  The threshold language of section 600A.8(3)(b) requires a parent to contribute a reasonable amount to the support of the child to prevent a finding of abandonment, whether or not the court has ordered the parent to pay a certain amount.  *See In re W.W.*, 826 N.W.2d 706, 710–11 (Iowa Ct. App. 2012).  The juvenile court found that Kisha satisfied the economic-support element because $112 per month was withheld from her benefits under a Child Support Recovery Unit order effective July 2021.

Michael challenges that finding.  He notes that M.K. was in his care since October 2018, but Kisha did not start paying support until ordered to do so more than two years later.  He also points out that Kisha did not buy M.K. presents for her birthday or Christmas.  We agree with Michael that Kisha abdicated her financial responsibilities toward M.K.  Even within her limited means, Kisha made limited effort to provide economic support for her daughter.

### 2. Regular Visitation and Communication

Assuming Kisha's failure to provide reasonable financial support does not resolve the matter, we would still find that she abandoned M.K. under sections 600A.2(20) and 600A.8(3)(b)(1) and (2).[5]  In its termination order, the juvenile court referenced Michael's estimate that, before the protective order, Kisha tried to visit

---

[5] The parties do not dispute that Kisha did not live with M.K. during the relevant time.  *See* Iowa Code § 600A.8(3)(b)(3).

M.K. twice a month and also called her twice a month. Yet the court found those were only "marginal efforts" to communicate with the child under section 600A.2(20) and did not prevent a finding of abandonment.

We agree that Michael proved abandonment, but apply a different analysis than the juvenile court. In our de novo review, we read Michael's testimony as documenting many fewer visits by Kisha. Between entry of the bridge order in July 2020 and entry of the protective order in August 2021, he recalled that Kisha tried to spend time with M.K. "a few times" but "not many." Although Kisha might have asked to see M.K. twice a month, Michael testified that usually Kisha was under the influence of drugs, so it was not safe to allow visitation. It is reasonable for a custodial parent to require the parent seeking visitation to be drug free. *See In re G.A*, 826 N.W.2d 125, 129 (Iowa Ct. App. 2012). Even before her assaultive behavior prompting the protective order, Kisha failed to assume the duties expected of a parent. *See* Iowa Code § 600A.2(20). We find Michael has met his burden of proof.

## B. Best Interests

In asking us to preserve her parental rights, Kisha does not address M.K.'s best interests. Even if she had, in our de novo review of the record, we would affirm the juvenile court's best-interests finding. "One of the important considerations in determining the best interests of a child is the child's emotional and psychological health." *In re A.H.B.,* 791 N.W.2d 687, 690 (Iowa 2010). Without question, Michael is safeguarding M.K.'s emotional and psychological health, as well as her physical well-being. As the guardian ad litem (GAL) reported, M.K. has a secure, loving home and a close relationship with her father. As for

Kisha, the GAL reported that she was unstable and not seeking treatment for her methamphetamine use or her mental health. Because of Kisha's instability, the GAL believed that termination of her parental rights was in M.K.'s best interests. We agree. M.K.'s current and future needs are best met by Michael without the risk of harm from Kisha's intervention while struggling with her addiction and untreated mental health issues.

**AFFIRMED.**